[No. 28809.   *En Banc.*   March 16, 1943.]

THE STATE OF WASHINGTON, *Respondent,* v. MARVIN McCOLLUM, *Appellant.*[1]

*John C. Richards,* for appellant.

*Leslie R. Cooper, C. P. Brownlee,* and *Philip Sheridan,* for respondent.

MALLERY, J.—The only questions presented by this appeal arise out of the denial of defendant's motion to

[1]Reported in 136 P. (2d) 165.

suppress the search and seizure of a pistol, and its admission in evidence over defendant's objection.

The defendant lived a short distance from the complaining witness, Mrs. Violet Barnes. The two had been close friends for some time. On the evening of March 30, 1942, defendant went to the home of Mrs. Barnes. He had been drinking. At the time, she was entertaining her mother and some friends. She met him at the front door and refused to admit him. He said to her, "You can't do this to me," and he pulled a small automatic pistol from his pocket. Mrs. Barnes was not immediately frightened and told him to put the pistol away and go home; whereupon, he pointed the pistol at her and, repeating the statement, "You can't do this to me," added, "I'll shoot you." Her testimony then is as follows:

"Q. What, if anything, did you do? A. Well, I got frightened, and I ran through the bedroom. I have two doors there—and I ran right around again, and came right back to the door; and by that time he kind of went back like this, and I slammed the door shut."

Defendant left. A few moments later, he called Mrs. Barnes by telephone. A guest answered the telephone, and defendant asked the guest to tell Mrs. Barnes that he had been shot and that he wished Mrs. Barnes to come over to his home and take care of him. She did not do so.

Shortly after this telephone conversation, police officers, having a report of a shot having been fired, called on defendant at his home, where they found him wearing a bathrobe, and intoxicated. He denied having heard any shot, and the officers left. Later the same evening, having received a report of the happenings at Mrs. Barnes' house, the chief of police and another officer called upon defendant and inquired specifically if he owned or had in his possession a

small automatic pistol. He denied that he did, and showed the officers a rifle; whereupon, the officers left without making any search of the premises. Defendant had, in fact, shot himself in the thigh. Still later, on the same evening, he called a doctor, who had him taken to the hospital.

The next day, March 31st, a formal warrant of arrest was read to defendant at the hospital, charging him with the crime of second-degree assault committed upon Mrs. Barnes. The same day, the police officers had a number of conversations with the defendant, in which defendant admitted, in substance, most of the foregoing facts. He claimed that the so-called assault was all in the nature of a lark or a joke. He told the officers that he owned a small automatic pistol; that he had had it with him when he called upon Mrs. Barnes, but that it was not loaded at that time. He said that, after he returned from Mrs. Barnes' home, he had loaded the pistol and had accidently shot himself.

The following day, April 1st, a formal information was filed against defendant in the superior court, and his house was searched by the chief of police. The pistol was found on a shelf in the basement. It was loaded, but an empty cartridge was jammed in the mechanism. The pistol was identified by the complaining witness and admitted in evidence over the objection of defendant. His motion to suppress was denied. The police made no report of the discovery to the defendant. It was not shown that he learned that the police had possession of the pistol until after the trial had begun. Consequently, it is assumed that his motion to suppress during the course of the trial was timely.

The only witness who testified for the defense was the defendant himself. He told the same story of the

affair as he had told the police at the hospital. He reasserted that the whole affair was a joke and intended as such. He denied actually pointing the pistol at Mrs. Barnes or saying, "I'll shoot you."

██ Defendant invokes Rem. Rev. Stat., § 2240-1 [P. C. § 9358-1]. This statute makes it unlawful for police officers to enter and search a private dwelling without authority of a search warrant issued upon a complaint *as by law provided.*

The question of the necessity for a search warrant in this kind of a case was passed upon by this court in *State v. Much,* 156 Wash. 403, 287 Pac. 57. The rule therein laid down was adhered to in *State v. Thomas,* 183 Wash. 643, 49 P. (2d) 28, in which this court said (p. 646):

"In *State v. Much,* 156 Wash. 403, 287 Pac. 57, where the defendant was charged with murder, officers went to his home and, digging in his yard, found letters and money which were introduced in evidence against him at the trial. It was contended that these articles should not be received in evidence, for the reason that they were procured by the officers without authority of a search warrant, in contravention of his constitutional right. Commenting upon this contention, the court said:

" 'It is contended by appellant that these articles should not have been received in evidence for the reason that they were procured by the officers without the authority of a search warrant in contravention of his constitutional rights, both under the Federal and state constitutions.

" 'No statute has been cited, and we can find none, in this state authorizing the issuance of search warrants for the evidence of the instruments of a murder. Several statutes exist providing for and requiring search warrants for the search and seizure of intoxicating liquor, stolen goods, counterfeit coin, gaming apparatus and the like, but none conferring jurisdiction upon any magistrate to issue search warrants, the

subject-matter of which is the evidence or instruments of murder. There were circumstances indicating the guilt of appellant at the time of his arrest, and the searches were made by the officers after the arrest.

" 'It is only unreasonable searches and seizures, without probable cause, that are forbidden. *Carroll v. United States*, 267 U. S. 132. That the searches having been made upon probable cause, uncovered more and convincing evidence of the guilty connection of appellant with the heinous crime, is his misfortune; but it in no wise renders the evidence, so discovered, incompetent.' "

Earlier in the opinion, the court said:

"The appellant invokes Rem. Rev. Stat., § 2240-1 [P. C. § 9358-1]. This statute makes it unlawful for police officers to enter and search a private dwelling without the authority of a search warrant issued upon a complaint as by law provided. *The statute, of course, has no application to a search made as incident to a lawful arrest.*" (Italics ours.)

Until these cases are overruled by this court, they determine this point of law against appellant.

■ Appellant further contends that the instant search was not *incident* to the arrest because he was arrested while in the hospital, and was not present when the search was made. We have held differently. In *State v. Evans*, 145 Wash. 4, 258 Pac. 845, this court sustained a search, where the defendant was not arrested in his home, and the search was made later in his absence, while he was at the police station.

Webster's New International Dictionary gives the following definition of the word "incident":

"2. Law. Dependent on, or appertaining to, another thing (the principal); directly and immediately pertinent to, or involved in, something else, though not an essential part of it."

Under the authority of *State v. Evans, supra, incident to* does not mean: "Coincidentally with, or aiding the course of, an arrest."

Much of the scientific investigation of murders and other felonies would be unlawful if the police were powerless to act without a search warrant, in view of the fact that search warrants cannot be issued for such purpose.

■■ Defendant further contends that the admission of the pistol containing a jammed cartridge is prejudicial error, in view of defendant's testimony that the pistol was empty when he went to the complaining witness' home, and, therefore, not being in the same condition as when found by the officers, was inadmissible in evidence. Whether the pistol was loaded or not, is immaterial if the person at whom it was pointed did not know that it was not loaded, since the controlling factor is the state of mind of the assaulted person. *Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn. (2d) 485, 125 P. (2d) 681; *Howell v. Winters,* 58 Wash. 436, 108 Pac. 1077; *Allen v. Hannaford,* 138 Wash. 423, 244 Pac. 700.

The display of a pistol before the jury and its admission in evidence in the state's case in chief, could conceivably have great weight with the jury. It cannot be said, as a matter of law, that it did not influence the jury. It was therefore either not error or it was prejudicial error. We hold that it was not error.

The judgment is affirmed.

BEALS, BLAKE, and GRADY, JJ., concur.

STEINERT, J. (concurring in the result)—I concur in the affirmance of the judgment, but not upon the ground nor upon the line of reasoning assigned in the majority opinion. I do not agree that the search of appellant's home without a search warrant was law-

ful merely because an information charging him with the crime of second-degree assault had been filed against him prior to the time of the search. Nor do I agree that the search was in any sense incidental to the arrest, the search having been made while appellant was confined in a hospital, away from the vicinity of his home, and having been conducted the day after his arrest, and without his knowledge or consent. For these reasons, I think that the pistol, which was uncovered by the search, should not have been admitted in evidence.

The admission of that evidence, however, was not, in my opinion, prejudicial to the appellant's defense. He admitted that he owned a pistol which was of an automatic type, and that he had it with him when he called at the home of the prosecuting witness. The evidence discloses, the verdict establishes, and the majority opinion states that appellant pointed the pistol at the witness and threatened to shoot her. Whether or not the pistol was loaded is wholly immaterial, so long as the witness was put in fear, as she was, by his act and threat. His admissions and the testimony of the state's witnesses were alone sufficient to convict appellant of the crime. His only defense was that the whole affair was a joke. The jury evidently thought otherwise and, in my opinion, was fully justified in coming to that conclusion.

Regardless of the admission of the pistol in evidence, the jurors could not, upon their oaths, and under the instructions given them by the court, have done otherwise than find the appellant guilty of the offense charged. The pistol itself established nothing beyond what the other evidence in the case established, and I am unwilling to believe that the jury was induced to find the appellant guilty of pointing the pistol merely because the pistol was displayed in court at the time

of the trial. While appellant does not so state the proposition, his claim of prejudice amounts, in effect, simply to this: If the jury had not *seen the pistol in court*, it might not have found him guilty even though the evidence warranted no other conclusion; or, further, had the pistol not been brought into court, he might have had the benefit of perjuring himself by denying that he ever owned a pistol or that he had one with him when he went to the home of the prosecuting witness. No such safeguard against conviction of a crime is provided or intended by the criminal law.

I am convinced that, while the admission of the pistol in evidence was erroneous, that circumstance did not, under the facts positively established, constitute prejudice in fact or in law.

For these reasons alone, I concur in the affirmance of the judgment.

JEFFERS, J., concurs with STEINERT, J.

MILLARD, J. (dissenting)—Defendant was, by information, charged with the crime of feloniously assaulting the prosecuting witness with a pistol. When counsel for the state offered the pistol in evidence, defendant's then counsel claimed surprise, objected to introduction of the article in evidence, and moved its suppression on the ground that the evidence had been obtained from the home of appellant without his consent and without a search warrant. The objection was overruled, the motion was denied on the ground that it was not timely, and the pistol was admitted in evidence. Trial to a jury resulted in a verdict of guilty. Defendant appealed from the judgment and sentence entered against him upon the verdict.

Appellant committed the assault (pointed pistol at the prosecuting witness) 8:15 p. m., March 30, 1942, in the home of the prosecuting witness, 2710 Oakes

avenue, Everett, Washington. Very shortly thereafter, appellant returned to his own home at 2601 Oakes avenue, Everett, Washington, where he accidently shot himself in the left leg. He immediately telephoned the information to the prosecuting witness, who at once notified the police. That evening, two local policemen called at the home of appellant, whom they did not then arrest, and learned that he was under the influence of intoxicating liquor. Later the same night (March 30, 1942), appellant was placed in a local hospital to receive treatment for the wound in his leg. March 31, 1942, the day subsequent to the alleged commission of the assault, appellant, on justice court warrant issued against him, *was placed under arrest at the hospital for assault* alleged to have been *committed by him the night before at the home of the prosecuting witness.*

April 1, 1942, a local policeman, accompanied by the prosecuting witness, searched appellant's apartment (his home) without his consent or knowledge and without a search warrant, while appellant was absent therefrom in a local hospital. A thorough search of the rooms on the main floor of appellant's home was fruitless; whereupon, the searching parties—without a search warrant and without permission of appellant, in hope of finding evidence in that home, where the offense was not committed and where appellant was not arrested—unlocked door to basement of home and diligently searched that portion of appellant's home, where they found a pistol.

Appellant's present counsel, who did not represent appellant in the trial court, insists that, as neither he nor appellant was aware, until the pistol was offered in evidence, that appellant's home had been entered and the pistol found therein, the motion to sup-

press was timely and that the evidence should have been suppressed for the reason that it was obtained without a search warrant.

Counsel for the state admit in this court that the motion to suppress was timely made, but argue that, as the search of appellant's home was incidental to a lawful arrest, the search was "lawful and not an unreasonable one"; therefore, the pistol found on that search was admissible in evidence under authority of *State v. Much,* 156 Wash. 403, 287 Pac. 57, and other cases.

In argument for new trial, counsel for appellant contended that the trial court erred in admitting the pistol in evidence. In its memorandum decision, the court correctly conceded, as follows, that the objection to the admission of the pistol in evidence was timely:

"Defendant was arrested on a warrant at the hospital, which hospital was located some distance from his home. On the following day police officers of the City of Everett along with the prosecuting witness went to the home of defendant and, upon search of the basement, found the gun admitted in evidence. The officers had no search warrant or process of any kind authorizing a search of defendant's home. During the course of the trial and at the time the gun was first offered in evidence, defendant's attorney objected and I ruled that the objection was not timely in that no motion had been made for suppression of evidence. Without objection the officer was cross-examined and the facts heretofore recited were brought to light. Defendant's counsel then renewed his objection to the admission of the gun. This last objection was overruled and upon motion for new trial defendant now asserts that the court erred in admitting the gun in evidence.

"Whether or not the objection is made in timely manner is the first question presented. The evidence of the State's witnesses disclosed that defendant was under arrest at the hospital in Everett at the time the

search was made, that such arrest was lawful and that the search was made the day after the arrest at the hospital. The record does not disclose whether there was anybody at home at the time of the search and does not disclose whether or not some person may have given consent to a search of the house. Under the record as it stands, however, I am inclined to the belief that the objection to the admission of the gun was made in timely manner under the holding of our court in the case of *State v. Raum,* 172 Wash. 680."

The trial court expressed the view that the search was legal, as it was made incident to a lawful arrest; therefore, the pistol obtained on that search was admissible in evidence.

In *State v. Raum,* 172 Wash. 680, 21 P. (2d) 291, which is determinative of the question whether appellant timely objected to admission of the pistol in evidence, we held, in conformity to rule enunciated in *State v. Dersiy,* 121 Wash. 455, 209 Pac. 837, 215 Pac. 34, that, where the admitted facts show—as they do in the case at bar—that the articles were obtained on an unlawful search, it is error to admit the articles in evidence, over objection first made when the articles are offered in evidence, since there is no collateral issue of fact to be tried, and nothing for the court to do but sustain the objection.

The founding fathers were aware of the ills to which a republican form of government is peculiarly heir. They were mindful of the fact that a free people too soon forget the fathers' sacrifices which made the heritage of liberty possible, and that, through the years, as they prosper, the people grow more indifferent to, and heedless of, the fundamental principles of government, and fall an easy prey to the slow and insidious encroachment from within upon natural and constitutional rights.

"  .  .  .   the little rift within the lute
   That bye and bye will make the music mute;
   And, slowly widening,
      Ever silence all."

The fathers, warning us—some of our present day members of Congress are tardily endeavoring to awaken the American people from their Utopian dream and challenging them to recapture their constitutional rights—that individual rights and free government would be lost if we were not heedful of the basic principles, wrote

"A frequent recurrence to fundamental principles is essential to the security of individual rights, and the perpetuity of free government."  Art. I, § 32, Washington constitution.

Art. I, § 7, Washington constitution, provides that no person shall be disturbed in his private affairs, "or his home invaded, without authority of law."

Clearly, the foregoing provision is mandatory, in view of Art. I, § 29, of our state constitution, which reads as follows:

"The provisions of this constitution are mandatory, unless by express words they are declared to be otherwise."

Rem. Rev. Stat., § 2240-1 prohibits the search of any private dwelling-house without the authority of a search warrant.

The constitutional (Art. I, § 7, Washington constitution) and statutory (Rem. Rev. Stat., § 2240-1) prohibition against the invasion of private dwellings, is declaratory of the common-law right of the citizen not to be subjected to search or seizure without warrant.

Searches and seizures without warrants are out of harmony with the traditions of our government.

"Except in the case of stolen goods, there is no power at common law to issue a warrant authorizing the search of a house [see *Entick v. Carrington* (decided 1765), 19 State Tr., 1029, 1067]. But provision is made by statute for the issue of a search warrant in certain specified cases." 9 Halsbury's Laws of England (2d ed., 1933), p. 101, § 131.

In the notes to the foregoing section is a list of the statutes which authorize issuance of a search warrant.

*Entick v. Carrington,* XIX State Trials 1030, was an action of trespass by plaintiff against Carrington and three other messengers in ordinary to the king, tried during the sixth year (1765) of the reign of George III. The compiler entitled the cause "The Case of Seizure of Papers," for the reason that the chief point adjudged was that a warrant to search for and seize the papers of the accused, in the case of a seditious libel, is contrary to law. One of the defenses of the defendants in the case was that they seized the papers of the plaintiff by virtue of a warrant issued by one of the principal secretaries of state in the king's name, authorizing them to seize and apprehend the plaintiff and his books and papers, plaintiff being alleged to have written certain seditious papers which grossly and scandalously reflected upon the king and upon parliament.

Counsel for plaintiff argued that a power to issue such a warrant was contrary to the genius of the law of England. In holding that the search and seizure were unlawful, the court used the following language which is apt in the case at bar:

"What would the parliament say, if the judges should take upon themselves to mould an unlawful power into a convenient authority, by new restrictions? That would be, not judgment, but legislation."

The English people were so jealous of their rights and so apprehensive of encroachment by the government upon their liberties that, while, at the common law, a private person had the power to arrest, without a warrant, one whom he had a reasonable cause for suspecting of having committed treason or felony, the king had no power to arrest or order the arrest of such a person. 9 Halsbury's Laws of England (2d ed.) p. 85. See, also, 2 Coke's Institutes 186, 187, and case of Lord Kimbolton and the Five Members, 4 State Trials 83, in the year 1641.

It is true that, wherever a valid arrest is made, property found within certain legal limitations, in connection with such arrest, which tends to prove the commission of the crime charged, may be held by the arresting officer for evidence in prosecution of the defendant. The rule that if the arrest is lawful the seizure is lawful is, according to the best considered cases and texts, restricted to property seized by a search of the person or the room where the arrest took place, which property must be of an evidentiary nature, tending to establish the commission of crime. Cornelius, Search & Seizure (2d ed.), p. 171, § 46.

"While it is well settled that incidental to a lawful arrest an officer has the right to search the person of the individual arrested and seize any evidence tending to establish 'crime,' whether it be the one for which the arrest was made or any other, the cases do not so clearly define how far an officer may go, in searching the room, premises or effects of the person arrested. The following principles, however, are well settled: (1) If the *arrest is made outside the home* or rooming place of the arrested party the *officer has no right to go to* the *place* where *he resides and* make a *search for incriminating evidence* [*Amos v. United States,* 255 U. S. 313, 65 L. Ed. 654, 41 S. Ct. 266; *Gouled v. United States,* 255 U. S. 298, 65 L. Ed. 647, 41 S. Ct. 261; *Silverthorne Lumber Co. v. United States,* 251 U. S. 385, 64 L. Ed. 319, 40

S. Ct. 182, 24 A. L. R. 1426; *Flagg v. United States* (C. A. A.), 233 Fed. 481; *United States v. Mounday,* 208 Fed. 186; *United States v. Mills,* 185 Fed. 318; *State v. Rowley,* 197 Iowa 977, 187 N. W. 7]; (2) the officers *may seize* any *articles* of an incriminating nature visible to them *in* the *rooms where* the *arrest is made;* (3) the *officers have no right to search any part of the residence* of person *except* the *room where* the *arrest is made.*

"So far as a private residence is concerned the Supreme Court of the United States has held such a place can not be searched without a search warrant and that even probable cause to believe that contraband is contained therein would not be sufficient to justify a search thereof without a warrant. And *because* a *defendant is lawfully arrested at the home of another* this *gives* the *officers* no *right to take* the *defendant to his home* several blocks distant *and search it."* Cornelius, Search and Seizure (2d ed.), p. 177, § 50. (Italics mine.)

The fourth amendment to the United States constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In *Agnello v. United States,* 269 U. S. 20, 70 L. Ed. 145, 46 S. Ct. 4, 51 A. L. R. 409, the United States supreme court held that the search without a search warrant of the premises of one (Agnello) of several conspirators who violated the anti-narcotic act, who had been placed under arrest at the residence of one of them, violated the fourth amendment. The court said:

"We think there is no state statute authorizing the search of a house without a warrant; and, in a number of state laws recently enacted for the enforcement of prohibition in respect of intoxicating liquors, there are

provisions similar to those in § 25 of the National Prohibition Act. Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See *Entick v. Carrington,* 19 Howard's State Trials, 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause. See *Temperani v. United States,* 299 Fed. 365; *United States v. Rembert,* 284 Fed. 996, 1000; *Connelly v. United States,* 275 Fed. 509; *McClurg v. Brenton,* 123 Ia. 368, 372; *People v. Margolis,* 220 Mich. 431; *Childers v. Commonwealth,* 198 Ky. 848; *State v. Warfield,* 184 Wis. 56. The search of Frank Agnello's house and seizure of the can of cocaine violated the Fourth Amendment.

"It is well settled that, when properly invoked, the Fifth Amendment protects every person from incrimination by the use of evidence obtained through search or seizure made in violation of his rights under the Fourth Amendment. *Boyd v. United States, supra* [116 U. S. 616], 630, *et seq.; Weeks v. United States, supra* [232 U. S. 383], 398; *Silverthorne Lumber Co. v. United States, supra* [251 U. S. 385], 391, 392; *Gouled v. United States, supra* [255 U. S. 298], 306; *Amos v. United States,* 255 U. S. 313, 316."

The court, addressing itself to the rule as to the scope of search incidental to arrest, said that the right to seize any article of an incriminating nature in the rooms where the arrest is made

". . . does not extend to other place. Frank Agnello's house was several blocks distant from Alba's house, where the arrest was made. When it was entered and searched, the conspiracy was ended and the defendants were under arrest and in custody elsewhere. That search cannot be sustained as an incident of the arrests. See *Silverthorne Lumber Co. v. United*

*States,* 251 U. S. 385, 391; *People v. Conway,* 225 Mich. 152; *Gamble v. Keyes,* 35 S. D. 645, 650."

The fourth amendment to the United States constitution, which provides that the *right of the people to be secure* in their homes *against unreasonable searches and seizures*—a right which existed as a common-law right prior to the adoption of the Federal constitution—shall not be restricted, has been, as stated above, interpreted by the United States supreme court, which holds, true to Anglo-Saxon traditions, that a man's home is his castle and cannot be searched without a search warrant. The belief, however well founded, that the criminal evidence sought is hidden in a dwelling-house, an apartment, a hotel room, or whatever may be one's home, would not justify a search of the place without a warrant. *Agnello v. United States, supra.*

The pistol should not have been received in evidence, for the reason that it was obtained by the local police officer without the authority of a search warrant in contravention of Art. I, § § 7 and 9, Washington constitution (which specifically prohibits—in harmony with the fourth and fifth amendments to the United States constitution and declaratory of the common law—invasion of any person's home without authority of law and guarantees immunity from self-incrimination) and the statute (Rem. Rev. Stat., § 2240-1) which provides,

"It shall be unlawful for any policeman or other peace officer to enter and search any private dwelling-house or place of residence without the authority of a search-warrant issued upon a complaint as by law provided."

In Corpus Juris (56 C. J. 1187) it is stated that the general rule is that the constitutional or statutory guaranties do not prohibit all searches and seizures without a warrant, for the reason that their prohibition

is directed against all unreasonable searches and seizures.

Our statute and constitution are not so limited. The interpretation of the qualifying language "unreasonable searches and seizures" by the editor of Corpus Juris is illogical and is contrary to the interpretation by the United States supreme court of the fourth amendment to the United States constitution. See *Agnello v. United States, supra.*

In *State v. DeFord,* 120 Ore. 444, 250 Pac. 220, which is followed by *State v. Lee,* 120 Ore. 643, 253 Pac. 533—the Oregon constitution contains the language "unreasonable search or seizure"—the Oregon supreme court applied the rule announced in 56 C. J. 1187, on the ground that, if the possession of a warrant were the test of reasonableness, the force and effect of the word "unreasonable" in the constitutional provision would be lost.

In *State v. McDaniel,* 115 Ore. 187, 231 Pac. 965, 237 Pac. 373, which is not discussed in *State v. DeFord, supra,* and *State v. Lee, supra,* is the following logical discussion of the question:

"Our attention is called to the proposition that the Constitution is addressed only to the legislature, and there being no law of the state authorizing unconstitutional searches, the officers, at most, were trespassers, and the remedy is against them. But the Constitution is addressed not only to the legislature, but to every officer of the state, including the judiciary. It is said by the Supreme Court of the United States, in the case whose reasoning is adopted by this court in the Laundy case, 'The Fourth Amendment was intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers of the law acting under the legislature or *judicial* sanction. This protection is equally extended to the action of the government, and officers of the law acting under it. To sanction such proceedings would be to affirm by *judicial decision* a manifest neglect if not an open defiance

of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action.' *Weeks v. United States, supra,* p. 394 [232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 343]; *Boyd v. United States, supra* [116 U. S. 616, 29 L. Ed. 746, 6 S. Ct. 524]; *Adams v. New York,* 192 U. S. 585 (48 L. Ed. 575, 24 Sup. Ct. Rep. 372, see, also, Rose's U. S. Notes).

"Besides, the trespass of the officers and the remedy against them has no relation to the competency of the evidence, which is the question here. That is to be determined upon its own merits. If the evidence is made competent by the trespass and the remedy against the trespasser, every confession wrung by an officer from a defendant by force and duress would have to be admitted because the defendant had a remedy against the officer.

"Another question meets us. May a search, without a warrant, be reasonable? It is said that a search with a warrant may be unreasonable, and a search without a warrant be reasonable and lawful, if reasonable. The first proposition is a legal impossibility. An officer with a warrant duly issued who follows its commands cannot make an unreasonable search. It is reasonable because it is lawful. He may exceed his authority, and the search be unreasonable, but in that case he is no longer with a warrant. He loses its protection. It dies in his hands, and he is a trespasser *ab initio.*

"Nor is the second proposition any sounder. If he makes a search without a warrant, however polite, gentle, or considerate he may be, the search is unreasonable, because it is unlawful. The standard of reasonableness is not the conduct of the officer, but the possession of the warrant."

The constitution of Kentucky provides that the people shall be secure in their persons, houses, and possessions from unreasonable search and seizure. In *Youman v. Commonwealth,* 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303, it was held that, while it might be thought, in view of the use of the word ''unreasonable'' in the constitution, a reasonable search and seizure, as one that was not unreasonable, would be allowed with-

out a warrant, but that there was no foundation for such construction; that the constitutional provision does not permit any kind or character of search of houses, papers, or possessions without a search warrant.

"The common-law maxim, 'Every man's house is his castle,' is guaranteed by the constitutional provision of 'the right of the people to be secure in their person, houses, papers and effects against unreasonable searches and seizures,' and that 'no warrant shall issue except upon probable cause, supported by oath or affirmation, describing the place to be searched and the person or things to be seized.' It was said by Lord Chatham that 'the poorest man in his cottage may bid defiance to all the forces of the crown; it may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the king may not enter, and all his forces dare not cross the threshold of the ruined tenement.' " *Bessemer v. Eidge*, 162 Ala. 201, 204, 50 So. 270, 272.

See, also, 56 C. J. 1190, § 80, to the effect that the search of one's home without a warrant is unreasonable and abhorrent to our laws, and that, under the Federal constitution, no search of a private residence, without invitation or consent, can be made without a search warrant, except when such a search is incident to a lawful arrest. In *State v. Slat*, 98 W. Va. 448, 127 S. E. 191, it was held that a search of a person's house without a valid search warrant is "unreasonable search" within Art. III, § 6 of the constitution of West Virginia, which provides that the rights of the citizens to be secure in their houses against unreasonable searches and seizures shall not be violated.

As stated in *Agnello v. United States, supra,* the right of the people to be secure in their persons, houses, and effects against unreasonable searches and seizures was not created by the fourth amendment to the United

States constitution, but existed as a common-law right before the constitution was adopted.

"It would seem as if, at this late day, these Amendments, which paraphrase the language of a more venerable Bill of Rights, would have had their intendments so fixed and determined by a chain of judicial construction, that little room would any longer exist for a reasonable doubt as to their cogency in any given case. But the case at bar seems to prove the contrary. The natural desire on the part of administrative officials to enforce the penal laws, and of the judiciary to lend vitality to such efforts, has created a shadowy terra incognita, wherein the interests of criminal justice collide with rooted constitutional immunities. Upon this region a great deal of casuistry has been expended in an endeavor to inhibit these immunities from defeating the immediate ends of justice." *United States v. Di Corvo*, 37 F. (2d) 124.

The fourth amendment to the United States constitution applies solely to the Federal government and its agencies. This state is limited in regard to searches and seizures only by our own constitutional provisions, Art. I, § 7. The rights and privileges saved to individuals by the state constitution cannot be lessened by the state legislature. Art. I, § 7, Washington constitution, limits the authority of our state legislature to enactments providing for searches and seizures, but it is implicit therein that the search and seizure must be reasonable. The legislature prohibited (Rem. Rev. Stat., § 2240-1) the search of any private dwelling house without the authority of a search warrant. Of course, the legislature could not authorize unreasonable searches and seizures. *State ex rel. American Mfg. Co. v. Anderson*, 270 Mo. 533, 194 S. W. 268, L. R. A. 1917E, 833. Statutes which authorize invasion of private premises and the sanctity of the home by search and seizure proceedings are to be strictly construed.

*Hart v. State,* 89 Fla. 202, 103 So. 633; *People v. Moten,* 233 Mich. 169, 206 N. W. 506.

In Cornelius on Search and Seizure (2d ed.) § 138, pp. 315-317, the learned author discusses the subject of statutory prohibitions against the search of private dwellings without warrant. In his forecast, as follows, that we would follow the plain, unambiguous statutory mandate (Rem. Rev. Stat., § 2240-1), the author was not afforded the light of the later opinion of this court in *State v. Much, supra,* where, in our endeavor to vitalize the efforts of the representatives of another branch of our government to further the ends of justice (convict and execute a cold-blooded murderer), we emasculated the statute, disregarded our constitution, and deprived the defendant of the protection which he should have been afforded under the constitution and the statute:

"Washington also has a drastic statute on the subject making it a gross misdemeanor for an officer to illegally search a dwelling house without the authority of a search warrant and *it would seem from the language of the Washington statute that any search of a dwelling house without the authority of a search warrant, would be illegal.*" (Italics mine.)

All illegal searches and seizures are "unreasonable" under Art. I, § 7, of our state constitution, while, of course, searches and seizures with authority of law are reasonable. In other words, under Art. I, § 7, Washington constitution, and Rem. Rev. Stat., § 2240-1, searches and seizures without a search warrant are illegal unless incidental to lawful arrest.

In *State v. Much,* 156 Wash. 403, 287 Pac. 57, we held that the trial court properly received in evidence articles which had been obtained by the officers without the authority of a search warrant. The unsound reason given for disregarding the statute (Rem. Rev. Stat., § 2240-1), Art. I, § 7, Washington constitution,

and the overwhelming weight of authority, was that, there being no statute requiring the issuance of a search warrant to search for evidence of a murder, it was not error to receive in evidence articles belonging to the victim, indicating the guilt of the accused, found on a search of the premises of the accused two or three days after his arrest outside his home; since only unreasonable searches without probable cause are forbidden. Obviously, the holding is so patently erroneous that it is hardly necessary to discuss it. The case should be overruled.

In *State v. Evans,* 145 Wash. 4, 258 Pac. 845, defendant, who was suspected of having committed a murder in a certain rooming house, was arrested on the street while on his way from the scene of the alleged crime to a room at a hotel in the same town. Following the arrest, he was taken to the police station and subjected to an examination, in the progress of which he made known the place of his room at the hotel. Police officers, without a search warrant, immediately went and searched the room, finding therein a pistol holster which fitted the automatic pistol taken from defendant's person. On the trial, the holster was admitted in evidence over defendant's objection that it had been obtained by an unlawful search. On appeal we held: (1) that the great weight of evidence sustained the trial court's finding that the defendant had consented to the search; and (2), by way of a full paragraph of dictum, that, even if the search of the room had been made without defendant's consent, we would hold the search lawful as incident to the arrest.

In *State v. Evans, supra,* again the interests of criminal justice collided with statutory and rooted common-law and constitutional immunities—protection against unlawful searches and compulsory evidence. The following dictum, which is unsound and is not, as im-

plied therein, supported by the weight of authority, improperly manifests willingness of a court to deny these immunities if by upholding same the immediate ends of justice might be defeated.

"But were it the fact that the search had been made without the consent of the appellant, we are not willing to hold that the search of his room was unlawful, or the evidence obtained by the search inadmissible. A heinous crime had been committed. The appellant was under arrest as the perpetrator of the crime. There was then in the possession of the officers making the arrest persuasive evidence tending to show that the appellant was guilty of the crime. In so far as our examination of the cases has extended, all of the cases hold, even those which adhere most strictly to the rule that evidence obtained by an unlawful search is inadmissible as evidence, that, where the accused is arrested in his home, or place of residence, a search of the home or place of residence may be lawfully made for evidence of his guilt. In this instance, the defendant was on his way to his place of residence when arrested, and the fact that he was caught before he reached the place ought not to require the application of a different rule." *State v. Evans,* 145 Wash. 4, 13, 258 Pac. 845.

A just criticism of *State v. Evans, supra,* in 3 Wash. L. Rev., pp. 59-61, reads as follows:

"The foregoing decision is undoubtedly correct on the first ground [defendant's consent to the search] stated, since consent waives the requisite of a search warrant. 24 R. C. L. 723; *State v. Tucker,* 137 Wash. 162. But the holding next suggested in the paragraph of dictum is without support in the authorities (the court cites none) and is squarely contrary to the epochal decision rendered two years earlier by the Supreme Court of the United States in *Agnello v. United States,* 269 U. S. 20, 46 Sup. Ct. 4, 70 L. Ed. 145 (1925). In that case, the defendant, in company with persons suspected of a felony under the federal antinarcotic act, was observed to leave his home and go to the home of one

Alba, where he was arrested while delivering some narcotics. While the defendant was being taken to the police station, certain of the revenue agents and police officers, without a search warrant, went to defendant's house, several blocks from the scene of his arrest, and on search found a can of cocaine, which, over defendant's objection, was admitted in evidence at the trial. It was held by the United States Supreme Court, reversing both federal courts below, that the 'search cannot be sustained as an incident to the arrest.' The Court speaking through Mr. Justice Butler, says: 'While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein . . . The *search* of a private dwelling *without a warrant is, in itself, unreasonable and abhorrent to our laws* . . . The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits, or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted . . . *But the right does not extend to other places* . . . Belief, however well founded, that an article is concealed in a dwelling house, furnishes no justification for a search without a warrant. . . . The search of Frank Agnello's house and seizure of the can of cocaine violated the Fourth Amendment.' Further authorities are collected in 32 A. L. R. 697; 51 A. L. R. 434. It has even been held that where a person is arrested on his premises just outside of his house, the house cannot be searched as an incident to the arrest without a warrant. *United States v. Steck,* 19 F. (2d) 161 (1927). It is to be noted that in the Agnello case, *supra,* the officers who observed the defendant coming from his house to the scene of the crime where he produced the cocaine had reasonable ground upon which they might have asked for a search warrant, whereas in the instant case in this state where the defendant was arrested with a revolver in his possession while on

his way from the scene of the murder to his home (of the location of which the officers had no knowledge until told by the defendant) had no particular grounds to suspect that his room contained any evidence of crime, but were merely engaged in a fishing expedition, and probably could not have sufficiently described any item to be searched for had they been required to ask for a warrant.

"In view of the fact that Rem. Comp. Stat., [Rem. Rev. Stat.] § 2240-1 makes it 'unlawful for any policeman or other peace officer to enter and search any private dwelling-house or place of residence without the authority of a search warrant issued upon a complaint as by law provided' (see later case of *State v. Buckley* [145 Wash. 87, 258 Pac. 1030], where both this statute and *Agnello v. U. S.* were cited with approval), and in view of the fact that an examination of the briefs in the instant case does not show that the decision of *Agnello v. U. S.* was before the court, it is to be hoped that the broad dictum in the instant case will not become the law of this state without re-examination of the question and a full examination of the authorities bearing on it. Considering the state of the authorities that have squarely passed on the question, the dictum does not appear to be a safe one for peace officers to follow."

On pages 1418 *et seq.*, 74 A. L. R. (which annotation supplements annotations in 3 A. L. R. 1514, 13 A. L. R. 1316, 27 A. L. R. 709, and 39 A. L. R. 811), will be found interesting reviews of the cases concerned with the questions of constitutional guaranties against unreasonable searches and seizures, as applied to search for, or seizure of, intoxicating liquor.

In 24 A. L. R. 1408 and 32 A. L. R. 408, the authorities on the subject of admissibility of evidence obtained by illegal search and seizure are reviewed. The general question of the right of search and seizure incidental to lawful arrest without a search warrant, is treated in annotations in 32 A. L. R. 680, supplemented by

annotations following *Henderson v. United States,* 12 F. (2d) 528, 51 A. L. R. 420.

*State v. Thomas,* 183 Wash. 643, 49 P. (2d) 28, is not in point. We held in that case that Rem. Rev. Stat., § 2240-1 had no application to a search made as an incident to a lawful arrest. *State v. Beaupre,* 149 Wash. 675, 271 Pac. 26, should be overruled. It is bottomed on dictum in *State v. Evans,* 145 Wash. 4, 258 Pac. 845, which was correct in result for the reason that defendant consented to the search. In *State v. Gunkel,* 188 Wash. 528, 63 P. (2d) 376, we held that, where objection to receiving in evidence articles unlawfully seized was not made until three months after the seizure, the objection was not timely. That case is not in point.

We should overrule *State v. Much, supra,* frankly acknowledging that it is not founded on sound reason, and declare the true doctrine as we should have done in that case. The case at bar is one in which personal liberty is involved; therefore, the doctrine of *stare decisis* may not be successfully invoked to prevent overruling *State v. Much, supra* (that decision does not constitute a rule of property), which was decided contrary to our statute, to our constitution, to the common law, and to all respectable authorities.

"Infallibility is to be conceded to no human tribunal. A legal principle, to be well settled, must be founded on *sound reason.*" *Leavitt v. Morrow,* 6 Ohio St. 71, 78, 67 Am. Dec. 334.

See, also, *Powell v. Superior Portland Cement, Inc.,* 15 Wn. (2d) 14, 129 P. (2d) 536.

The motion to suppress as evidence the pistol which was unlawfully seized was timely made by appellant. The admission in evidence against the accused in a criminal case of an article obtained by an illegal search of his home contravenes the guaranty of Art. I, § 7,

Washington constitution, and of the statute (Rem. Rev. Stat., § 2240-1).

The judgment should be reversed and the cause remanded for a new trial.

SIMPSON, C. J., concurs with MILLARD, J.

ROBINSON, J. (concurring in the result)—While I emphatically agree with Judge Millard that the search and seizure in this cause was unreasonable and unlawful, I also agree with Judge Steinert that, under the circumstances shown, the error in admitting the pistol in evidence was harmless. I accordingly vote to affirm the judgment.

[*En Banc.* September 27, 1943.]

PETITION FOR REHEARING DENIED.

MILLARD, J. (dissenting)—Each of nine judges of this court was elected, and qualified, for a term of six years under Art. IV, § 3, of our state constitution. Each of those judges holds the office for the term of six years, unless he dies, resigns, or is removed by impeachment proceedings prior to the expiration of that term. The limits of the term cannot be increased during that six-year term, nor may the legislature, other than by impeachment proceedings, shorten that term of office. Pursuant to Laws of 1941, chapter 201, one judge of this court became a member for such period of time as one of the nine judges is absent from this state in the active service of the United States. The questions whether that statute is constitutional and/or whether we have at this time a membership on this court of nine or ten judges is not now material.

This cause was heard by the court *En Banc,* with eight of the nine elected judges and the appointed judge sitting. Two of those nine judges were of the

view that the admission in evidence of the pistol was prejudicial. Three judges concluded that the admission in evidence of the pistol constituted error but was not prejudicial. Four judges deemed no error was committed in admitting the pistol in evidence, but expressed the opinion that, if the admission of such evidence was erroneous, it was clearly prejudicial and entitled the appellant to a new trial; that is, five judges held that the search violated the constitutional rights of appellant and six of the judges expressed the opinion that, if it were error to admit the pistol in evidence, such error was prejudicial. The opinion is of no value as a precedent as there is not a constitutional majority of this court in agreement on the determinative question before us.

There is not an English speaking court in the world which holds that evidence taken without a search warrant, as in the case at bar, is admissible against the defendant. All the cases hold that in such cases the defendant's conviction has no sufficient foundation to support it without the use of evidence which had been unlawfully obtained; therefore, the judgment of conviction must be reversed.

The only authority upon which the so-called majority opinion in the case at bar is based is our opinion in *State v. Much,* 156 Wash. 403, 287 Pac. 57, in which we disregarded the provision of the constitution securing the right of the people against unlawful searches and seizures and heeded not the constitutional provision that no person shall be compelled in any criminal case to be a witness against himself. In *State v. Much, supra,* we held that Rem. Rev. Stat., §§ 2237 to 2240-1, inclusive, which provided for the issuance of search warrants in certain cases and that it was unlawful to enter and search any private dwelling house or place of residence without the authority of a search

warrant, should be construed together; hence, no statutory authority existed for the issuance of a search warrant in a murder case. We said, in effect, that, as we had no statute authorizing the issuance of search warrants for the evidence of the instruments of a murder, the constitutional prohibition against the invasion of one's home without authority of law should be disregarded; otherwise, the law against the commission of the crime of murder could not be enforced.

Constitutional limitations and guarantees should not be contravened and treated as mere scraps of paper on the ground that a law cannot be enforced if the constitution is followed. This should be a government of laws, and not of men. Conceding, *arguendo*, that there is no statutory authority for the issuance of a search warrant in a murder case, that lack constitutes no justification for the unlawful seizure of appellant's pistol and admitting it in evidence against him.

In *Jokosh v. State*, 181 Wis. 160, 193 N. W. 976, is the following language which, except that the end sought was the enforcement of the prohibition law, is apt in the case at bar:

"It is also said that, if searches such as this cannot be made, the prohibition law cannot be enforced. This may be true in part or it may be true in whole. The answer is that an article of the constitution having its origin in the spirit if not in the letter of the Magna Carta prevents it, and that it is the duty of the court to sustain and enforce the constitution in its entirety, and not to permit what may seem to be presently a desirable mode of procedure to annul such fundamental portions of our organic law as the freedom from unlawful searches. The importance of such a provision may be lost sight of in times of peace in a well organized and well administered state, but in times of stress or dissensions its value is as great as those who inserted it in the constitution conceived it to be."

In *Hoyer v. State,* 180 Wis. 407, 193 N. W. 89, deputy sheriffs, without a search warrant, opened the door of defendant's automobile and removed bottles of intoxicating liquor from the car which they seized together with the liquor. Defendant was convicted of the crime of unlawful transportation of intoxicating liquors. On appeal, the supreme court of Wisconsin held that the intoxicants taken without a search warrant were not admissible in evidence against defendant as being in violation of the constitutional provision securing the right against unreasonable searches and seizures and also in contravention of the constitutional provisions that no person shall be compelled in a criminal case to be a witness against himself. The judgment was reversed, the court stating:

"For ourselves we elect to stand, as this court has heretofore stood, with the federal and other courts which consider these provisions of the Bill of Rights as embodied in constitutions to be of substance rather than mere tinsel. We hold, therefore, that the evidence challenged in this case was taken by the officers by unlawful search and seizure and contrary to sec. 11, art. I, Wis. Const. . . .

"This court squarely aligned itself with rulings of the United States supreme court in *Thornton v. State,* 117 Wis. 338, 341, 93 N. W. 1107, and *State v. Murphy,* 128 Wis. 201, 207, 107 N. W. 470, each of which cited with approval *Boyd v. U. S.,* 116 U. S. 616, 6 Sup. Ct. 524, and *Bram v. U. S.,* 168 U. S. 532, 18 Sup. Ct. 183, *infra.*

"We firmly believe as to each of these provisions that which was said as to the right of exemption from compulsory self-incrimination in *Twining v. New Jersey,* 211 U. S. 78, at p. 91 (29 Sup. Ct. 14):

" 'It was generally regarded then [referring to the adoption of the several constitutions], as now, as a privilege of great value, a protection to the innocent though a shelter to the guilty, and a safeguard against heedless, unfounded, or tyrannical prosecutions.'

"The two constitutional provisions here invoked are quite closely interwoven, and generally, as in this case, that which is obtained by unlawful search and seizure is subsequently attempted to be used to incriminate him from whom obtained, the one violation being but a preface to the other. This view has been very fully and clearly discussed by ANDERSON, J., in *Tucker v. State*, 128 Miss. 211, 90 South. 845, and many authorities are there cited.

"In *Lang v. State*, 178 Wis. 114, 189 N. W. 558, this court very recently set aside a conviction for murder because there were used in evidence against defendant, statements, miscalled a confession, extorted from him by resort to personal violence and methods declared to savor of the rack and thumb-screw. It is needless, perhaps, to say that we are still in accord with the views there expressed by Mr. Justice Jones, speaking for this court. The statements in that case obtained from the defendant were held inadmissible because of no probative force. But this court also there stated that other cases place the rejection of such evidence on the ground that it is a violation of the constitutional guaranty against the compulsory giving of evidence against oneself, citing to that effect *Bram v. U. S.*, 168 U. S. 532, 18 Sup. Ct. 183, *supra.* That view seems tacitly, if not expressly, approved in the case of *Weeks v. U. S.*, 232 U. S. 383, 393, 34 Sup. Ct. 341, and expressly so approved in *Goulet v. U. S.*, 255 U. S. 298, 306, 41 Sup. Ct. 261, *infra,* as well as in *Silverthorne L. Co. v. U. S.*, 251 U. S. 385, 391, 40 Sup. Ct. 182.

"We see no reason in logic, justice, or in that innate sense of fair play which lies at the foundation of such guarantees, why a court of justice, rejecting as abhorrent the idea of the use of evidence extorted by violation of a defendant's right to be secure in person and exempt from self-incrimination though it may result in murder going unwhipt of justice, should yet approve of the use, in the same court of justice, by state officers, of that which has been obtained by other state officers through, and by, a plain violation of constitutional guarantees of equal standing and value, though

thereby possibly a violation of the prohibition law may go unpunished.

"Sec. 11, art I, Wis. Const., *supra,* is a pledge of the faith of the state government that the people of the state, all alike (with no express or possible mental reservation that it is for the good and innocent only), shall be *secure* in their persons, houses, papers, and effects against unreasonable search and seizure. This security has vanished and the pledge is violated by the state that guarantees it when officers of the state, acting under color of state-given authority, search and seize unlawfully. The pledge of this provision and that of sec. 8 are each violated when use is made of such evidence in one of its own courts by other of its officers. That a proper result—that is, a conviction of one really guilty of an offense—may be thus reached is neither an excuse for nor a condonation of the use by the state of that which is so the result of its own violation of its own fundamental charter. Such a cynical indifference to the state's obligations should not be judicial policy.

"Such constitutional provisions here invoked are not grants of rights of action for trespass against official or individual violators of such guaranteed rights, for other provisions of the constitution give such remedies. To say, then, that when the state itself has thus violated its own pledges it may use the results thereby obtained for its own purpose, become a party to the trespass by ratification, trace its title through wrongful acts of its officers, remain itself immune in its sovereignty from legal liability, and then relegate the individual whose rights are thus swept away and made valueless in and by a court of justice to his bootless and fruitless action of trespass against such trespassing state officials as individuals, is to gibe and to jeer.

"No statute of limitations has or can run against such guarantees. The wisdom or propriety of them is not for the courts or state officials to question or debate any more than may such courts or officials question the wisdom or propriety of any other such provisions. Constitutional provisions of later date acquire no priority in value over their elders, and the efficacy of

any such provision does not diminish in comparison with others in any proportion based upon their respective perspectives. Zeal for the enforcement of one provision should not succumb to the temptation to breach the fidelity owed to another coequal provision. *Lang v. State,* 178 Wis. 114, 189 N. W. 558. While they stand as they have so long stood the courts are pledged to support and uphold them, be the consequences what they may."

I am not unmindful of the doctrine of *stare decisis* and am more or less familiar with our utterances respecting that principle. In *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634, we quoted with approval the following language from the supreme court of Indiana:

" 'Much as we respect the principle of *stare decisis,* we cannot yield to it when to yield is to overthrow principle and do injustice. Reluctant as we are to depart from former decisions we cannot yield to them, if, in yielding, we perpetuate error and sacrifice principle. We have thought it wisest to overrule outright rather than to evade, as is often done, by an attempt to distinguish where distinction there is none.' *Paul v. Davis,* 100 Ind. 422, 428."

The following language of the United States supreme court in the *Genesee Chief v. Fitzhugh,* 12 How. (U. S.) 443, 455, 13 L. Ed. 1058, is pertinent:

"It is the decision in the case of the *Thomas Jefferson* which mainly embarrasses the court in the present inquiry. We are sensible of the great weight to which it is entitled. But at the same time we are convinced that, if we follow it, we follow an erroneous decision into which the court fell, when the great importance of the question as it now presents itself could not be foreseen; and the subject did not therefore receive that deliberate consideration which at this time would have been given to it by the eminent men who presided here when that case was decided."

The foregoing language was quoted with approval in *Pollock v. Farmers' Loan & Trust Co.,* 157 U. S. 429,

576, 39 L. Ed. 759, 15 S. Ct. 673, where the United States supreme court said:

"Manifestly, as this court is clothed with the power, and entrusted with the duty, to maintain the fundamental law of the Constitution, the discharge of that duty requires it not to extend any decision upon a constitutional question if it is convinced that error in principle might supervene."

It is the duty of this court to maintain the fundamental law of the constitution, hence it follows that we should overrule the erroneous decision in *State v. Much, supra.* From January 1, 1915, to December 31, 1942, we challenged and/or overruled three hundred and eighty-seven of our opinions.

We filed opinions in 13,902 causes from January 1, 1915, to and including July 13, 1943, and of 13,464 of those opinions (the years 1942 and 1943 are excluded) 3,980 opinions were not unanimous.

| Year | Opinions | Not Unanimous | Year | Opinions | Not Unanimous |
|------|----------|---------------|------|----------|---------------|
| 1915 | 622 | 190 | 1930 | 503 | 147 |
| 1916 | 628 | 233 | 1931 | 569 | 165 |
| 1917 | 572 | 172 | 1932 | 489 | 125 |
| 1918 | 635 | 194 | 1933 | 485 | 180 |
| 1919 | 521 | 145 | 1934 | 405 | 107 |
| 1920 | 482 | 80 | 1935 | 427 | 150 |
| 1921 | 548 | 134 | 1936 | 383 | 129 |
| 1922 | 615 | 163 | 1937 | 347 | 113 |
| 1923 | 656 | 207 | 1938 | 359 | 91 |
| 1924 | 515 | 175 | 1939 | 317 | 78 |
| 1925 | 629 | 185 | 1940 | 319 | 109 |
| 1926 | 548 | 113 | 1941 | 297 | 99 |
| 1927 | 617 | 160 | 1942 | 274 | ... |
| 1928 | 504 | 172 | 1943 | 164 | ... |
| 1929 | 472 | 164 | | | |

I cite some of our opinions, as follows, to show that, while we greatly respect the doctrine of *stare decisis,* we will depart from former decisions when to yield to them we perpetuate error and sacrifice principle:

*Thompson v. Caton,* 3 Wash. Terr. 31, 13 Pac. 185, criticised (overruled) by *Benham v. Ham,* 5 Wash. 128,

131, 31 Pac. 459. *Smith v. Taylor,* 2 Wash. 422, 27 Pac. 812, criticised by *O'Connor v. Slatter,* 46 Wash. 308, 311, 89 Pac. 885, for remarks "not necessary to a decision in that case."

*Spithill v. Jones,* 3 Wash. 290, 28 Pac. 531, criticised in *McKinley v. Morgan,* 36 Wash. 561, 564, 79 Pac. 45, as "a case with which this court has never been entirely satisfied, and we do not care to extend the doctrine there announced." In *Nelson v. Denny,* 26 Wash. 327, 67 Pac. 78, we held that an order vacating a judgment is not an appealable order. In dissenting opinion, it was observed that this court did not formerly seem to treat the cases cited from the first of Washington as conclusive upon the question even under the old statute; that in *Northern Pac. & P. S. S. R. Co. v. Black,* 3 Wash. 327, 28 Pac. 538, concurred in by the full court, the right of an appeal from an order vacating a judgment was referred to as still an open question; that in *Marston v. Humes,* 3 Wash. 267, 28 Pac. 520, a proceeding brought to review an order vacating a judgment, a grave constitutional question was determined; and in *Reitmeir v. Siegmund,* 13 Wash. 624, 43 Pac. 878, we held that an order vacating a judgment is appealable and decided the case on its merits.

*Elwell v. Puget Sound & C. R. Co.,* 7 Wash. 487, 35 Pac. 376, criticised in *Miller v. Washington Southern R. Co.,* 11 Wash. 414, 39 Pac. 673, as in conflict with *Duggan v. Pacific Boom Co.,* 6 Wash. 593, 34 Pac. 157; *Carrigan v. Port Crescent Imp. Co.,* 6 Wash. 590, 34 Pac. 148; *Tootle v. First Nat. Bank,* 6 Wash. 181, 33 Pac. 345, and *Seal v. Puget Sound Loan & Inv. Co.,* 5 Wash. 422, 32 Pac. 214.

The statement in *Guley v. Northwestern Coal & Transp. Co.,* 7 Wash. 491, 35 Pac. 372, that

"Where the clear weight of the evidence is with either side, there is no substantial conflict, and the

court should take the decision of the case from the jury"

is criticised in *Tacoma v. Tacoma Light & Water Co.,* 17 Wash. 458, 480, 50 Pac. 55, as contrary to the true rule that when there is any evidence to warrant the verdict and the trial court has refused to set it aside, it will not be reversed on appeal. The opinion was again criticised on the same ground in *Pronger v. Old Nat. Bank,* 20 Wash. 618, 624, 56 Pac. 391, where we held that a judgment founded on the verdict of a jury will not be reversed, where there is a substantial conflict in the evidence, merely because the appellate court may be of the opinion that the weight of the evidence is contrary to the conclusion necessary to be reached in order to sustain the judgment.

*State ex rel. Bartelt v. Liebes,* 19 Wash. 589, 54 Pac. 26, criticised *Sears v. Williams,* 9 Wash. 428, 37 Pac. 665, 38 Pac. 135, 39 Pac. 280, as announcing a doctrine opposed to reason and the great weight of authority.

In *Denney v. Parker,* 10 Wash. 218, 38 Pac. 1018, the compromise of a claim by an administrator pending a lawsuit was affirmed. In *Ward v. Magaha,* 71 Wash. 679, 685, 129 Pac. 395, we criticised the opinion in the foregoing case as not resting upon authority and observed,

"There is now no reason for ignoring our statutes and allowing an administrator to waive a right, or admit, by his action or inaction, a claim against an estate. The reasons stated in the *Denney* case are unsound. The case seems to have proceeded upon the theory that the probate court was something 'over the hills and far away,' whereas it was the same court in which the action was pending, and with full power in the same judge to discontinue the action at law until the probate record could be made up."

*State v. O'Hare,* 36 Wash. 516, 519, 79 Pac. 39, criticises *State v. Cochran,* 10 Wash. 562, 39 Pac. 155, for

failure to hold that the crime of seduction under Bal. Code § 7066, is not limited only to those cases where there was a promise of marriage, as any seductive arts or promises, where the female involuntarily and reluctantly yields thereto, are sufficient.

*Tacoma v. Krech,* 15 Wash. 296, 46 Pac. 255, 34 L. R. A. 68, which held that an ordinance prohibiting barbers from pursuing their ordinary calling on Sunday was unconstitutional, was overruled by *State v. Nichols,* 28 Wash. 628, 69 Pac. 372, a prosecution for violation of the Sunday closing law (Bal. Code § 7152). In *State v. Bergfeldt,* 41 Wash. 234, 240, 83 Pac. 177, we held that a statute (Laws of 1903, p. 68) prohibiting the business of barbering on Sunday was constitutional and stated that *Tacoma v. Krech, supra,* was properly overruled. (See *Patton v. Bellingham,* 179 Wash. 566, 38 P. (2d) 364.)

Judge Rudkin refused to concur in the *per curiam* opinion, which states,

"He thinks the act in question without right and without reason, denies to an inconsiderable portion of our population the right to pursue their ordinary calling on Sunday, while that privilege or immunity is enjoyed by every other laborer and artisan in the state; that while, in a technical sense, the act applies to all persons within the state, yet in its practical operation, it affects barbers alone, and denies to them that equality before the law which our constitutions were established to maintain."

In *State ex rel. Fuller v. Superior Court,* 31 Wash. 96, 71 Pac. 722, we held that the fact that the superior court has no jurisdiction to try and determine an appeal from a justice of the peace is not ground for the issuance of a writ of prohibition, where the amount in controversy is less than two hundred dollars, since the judgment of the superior court is conclusive in such cases, under the constitutional provisions limiting the

appellate jurisdiction of the supreme court. In answer to the argument of relator that *State ex rel. Alladio v. Superior Court,* 17 Wash. 54, 48 Pac. 733, sustained the contention that the writ of prohibition will issue from this court to a superior court to prevent its trying a case which is without its jurisdiction, we said:

"The question discussed in that case was the legality of the notice of appeal and its proper service. It is true it was stated in that case that this court had previously decided that it had authority to issue the writ in such case, as it no doubt had in some of the earlier cases. But those cases have been overruled since that time by this court in many instances. In *State ex rel. McIntyre v. Superior Court of Spokane County,* 21 Wash. 108, (57 Pac. 352), this question was squarely presented in a mandamus case where the case of *State ex rel. Shannon v. Hunter,* 3 Wash. 92 (27 Pac. 1076) was overruled in this particular, and the court, in concluding its argument, said:

" 'It is true that the constitution (art. 4, § 4) provides that the supreme court shall have original jurisdiction in habeas corpus, quo warranto and mandamus as to all state officers; but that provision must be construed in relation to the other provision just mentioned, which was intended as a limitation upon the jurisdiction of the supreme court. [The provision referred to was the constitutional provision that this court shall not have appellate jurisdiction where the amount in controversy does not exceed the sum of $200, with certain exceptions.] It certainly was not the intention of the framers of the constitution, and would not be in harmony with any consistent theory of adjudication, to hold that a litigant could obtain the opinion of this court by mandamus upon a question of law, where he would be precluded from obtaining it upon appeal; . . . The idea of the constitution evidently is that cases involving small amounts can safely be entrusted to the final judgment of the superior court, and that as to such cases the superior court is the court of final determination.'

"This case was followed by *State ex rel. Gillette v.*

*Superior Court of Spokane County,* 22 Wash. 496 (61 Pac. 158), which was an application for a writ of review, and the court in that case, in refusing the writ, said:

" 'The constitution provides that, except in certain cases specifically mentioned, the appellate jurisdiction of this court shall not extend to cases where the original amount in controversy or the value of the property does not exceed the sum of $200, and we have frequently decided that a party litigant cannot by indirection obtain a review of his cause which he cannot obtain directly by appeal. It was evidently the intention of the constitution makers that the superior court should have exclusive jurisdiction in actions where the original amount in controversy did not exceed $200.'

"It is argued by the petitioner that these cases are not in point for the reason that one was an application for a writ of review, and the other for a writ of mandamus. But this argument is not sound. If we should grant the writ of prohibition in this case, it would, in effect, be a review of the judgment of the superior court on a question of statutory law, and the result would be (what we said in the case above cited should not be) that the relator would obtain by indirection what he could not obtain directly by appeal, viz., the judgment of this court on the action of the judge of the superior court in a cause involving less than $200. Prohibition is the counterpart of mandamus."

See *North Bend Stage Line v. Department of Public Works,* 170 Wash. 217, 16 P. (2d) 206, and *Kitsap County Transportation Co. v. Department of Public Works,* 170 Wash. 396, 16 P. (2d) 828, in which we held that chapter 119, Laws of 1931, which assumed to confer upon this court the exclusive reviewing jurisdiction therein described and assumed to deprive the superior court of its review and certiorari jurisdiction, was unconstitutional. Nevertheless, although *we were without jurisdiction,* which necessitated dismissal of the proceeding in each case, we reviewed the order of

the department sought to be appealed direct to this court, giving as reason for our disregard of the constitution, that the time for taking an appeal to the superior court had passed and the injured party had lost its right of appeal.

In *Ethredge v. Diamond Drill Contracting Co.*, 196 Wash. 483, 83 P. (2d) 364, upon objection of appellant the trial court rejected testimony offered by respondent. Respondent's offer of proof was rejected a second time upon appellant's objection. On appeal, we reversed the judgment solely on the ground that the trial court erred in rejecting respondent's offer of proof, despite the fact that any question as to the correctness of that ruling was not before us and there were no assignments of error entitling appellant to reversal of the judgment. In the dissenting opinion is the observation:

"Clearly, the trial court did not err in rejecting respondent's offer of proof; however, any question as to the correctness of that ruling is not before us. There is no cross-appeal in the case at bar, hence we may review only the questions — no constitutional or jurisdictional question is presented — properly raised by appellant."

In *State ex rel. Denny v. Bridges*, 19 Wash. 44, 52 Pac. 326, 40 L. R. A. 593, we said:

"The word 'navigation,' as used in the first section of the article of the constitution quoted [art. 15, § 1], is clearly used as a qualification of the word 'commerce.' "

In *State ex rel. Hulme v. Grays Harbor & P. S. R. Co.*, 54 Wash. 530, 103 Pac. 809, we criticised that statement as dictum and not a sound interpretation of that clause of the constitution.

In *Tacoma Bituminous Paving Co. v. Sternberg*, 26 Wash. 84, 88, 66 Pac. 121, we criticised the citation of

the "virtually overruled" case, *Philadelphia Mortgage & Trust Co. v. New Whatcom*, 19 Wash. 225, 52 Pac. 1063, as authority.

In *Seattle v. Smyth*, 22 Wash. 327, 60 Pac. 1120, 79 Am. St. 939, which was overruled *sub silentio* by *State v. Buchanan*, 29 Wash. 602, 70 Pac. 52, we held that a city ordinance which makes it unlawful for any contractor upon any of the public works of a city to require or permit any day laborer or mechanic to work more than eight hours in any one calendar day

"  .  .  . is unconstitutional, on the ground that it interferes with the right of persons to contract with reference to their services, where such services are neither unlawful nor against public policy."

In *In re Broad*, 36 Wash. 449, 455, 78 Pac. 1004, we criticised the foregoing and held that a like ordinance of the city of Spokane was constitutional.

In *Northern Pac. R. Co. v. Hasse*, 28 Wash. 353, 356, 68 Pac. 882, contrary to and criticising our opinion in *Northern Counties Inv. Trust v. Enyard*, 24 Wash. 366, 64 Pac. 516, we held that, where a homestead entry was made upon land through which a railroad company was entitled by 1864 act of congress to a right of way four hundred feet wide, the land enclosed and cultivated by the entryman, and the enclosure forcibly broken by the railroad company for the construction of its line of railway, the attitude of the parties was hostile from the inception of the right, and the occupation and cultivation thereafter by the entryman of such portions of the right of way as were not in actual use by the railway would constitute adverse possession.

In *Spokane Grain & Fuel Co. v. Lyttaker*, 59 Wash. 76, 109 Pac. 316, we held that the constitutional provision (Art. II, § 37) that no act shall be revised or amended by mere reference to its title, but the act shall be set forth in full as amended, does not apply to an

act complete and perfect in itself, although it amends by implication or is a substitute for a section in a former law on the same subject; and, hence, is not violated by the act of 1909, entitled an act relating to materialmen's liens and the enforcement thereof, providing for the service upon the owner of duplicate statements of all materials furnished for the construction of buildings, etc. We criticised *Copland v. Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769, upon which appellants largely relied, as follows:

"It must be conceded that their contention finds support in that decision. It was there held that the act of 1897 (Laws 1897, p. 93, relating to exemptions of personal property was amendatory of section 486 of Hill's Statutes and Codes (Rem. & Bal. Code, § 563), and was therefore void, because not enacted according to the requirements of the constitution. If the act of 1897 was strictly amendatory in its character, the conclusion of the court was unavoidable, but the legislature in its wisdom did not see fit to enact it in that form, and it may well be doubted whether the court did not go too far in limiting and restricting the legislature as to the mode it might pursue in the enactment of laws. *Lockhart v. City of Troy, supra.*

"In the course of its opinion in the case cited this court said:

" 'In construing similar constitutional provisions the courts seem generally to have held that this requirement does not apply to supplemental acts not in any way modifying or altering the original act, nor to those merely adding sections to an existing act, nor to acts complete in themselves, not purporting to be amendatory, but which by implication amends other legislation on the same subject.'

"The rule there stated is no doubt the correct one, but was not the act of 1897 a supplementary act within the meaning of that rule? It in no wise altered or amended existing laws, but simply increased the existing exemptions, by adding a new exemption of a different kind. The decision in *Copland v. Pirie* was controlled

largely by the decision of the United States district court for this district, in *In re Beulow,* 98 Fed. 86, construing the same statute. That court proceeded upon the theory that 'The new act is not complete, but refers to a prior statute, which is changed, but not repealed by the new act, so that the full declaration of the legislative will on the subject can only be ascertained by reading both statutes, the very obscurity and the tendency to confusion will be found which constitutes the vice prohibited by this section of the constitution.' But how often must we look to two or more acts to ascertain the full declaration of the legislative will? No one will for a moment doubt the power of the legislature to exempt homesteads by one act, household goods by another, farming implements by a third, and so on; yet the full declaration of the legislative will on the subject of exemptions could only be gathered by referring to these several acts. Followed to its logical conclusion, this argument would compel the legislature to embody in a single enactment, or in amendments thereto, all legislation relating to a single subject. Such was not the object or purpose of the provision in question. So long as a legislative act is complete in itself and does not tend to mislead or deceive, it is not violative of the constitution."

In *State ex rel. Ide v. Coon,* 40 Wash. 682, 82 Pac. 993, we held that where the amount in controversy is less than two hundred dollars, an appeal does not lie from a judgment of the superior court awarding a writ of mandate to compel the city officers to issue a warrant to pay a judgment, although the judgment was one entered by the supreme court for costs against the state, in an action prosecuted by the city, and the legal contention was involved that the city was not liable on the judgment. In criticising *State ex rel. Dudley v. Daggett,* 28 Wash. 1, 68 Pac. 340, which was overruled by *State ex rel. Plaisie v. Cole,* 40 Wash. 474, 82 Pac. 749, we said:

"The main contention of appellants is that the mandamus proceeding in this case was a proceeding to enforce an execution on the judgment of this court, and not in any sense a civil action for the recovery of money; that the judgment of this court, having been a judgment for costs against the state, it cannot be recovered against the city; and that this court has power and jurisdiction at all times and under all circumstances to enforce its judgments; and the case of *State ex rel. Jefferson County v. Hatch*, 36 Wash. 164, 78 Pac. 796, is cited to sustain the contention. But that case, it seems to us, is not in point, for the reason that it was a direct application in this court to compel an obedience to the judgment of this court. The case of *State ex rel. Plaisie v. Cole, supra*, was a mandamus case to compel a justice of the peace to grant a change of venue, and we held there that, inasmuch as the amount in controversy in the original action was less than $200, this court would not take jurisdiction of the appeal under the constitutional provision above referred to, and the case of *State ex rel. Dudley v. Daggett*, 28 Wash. 1, 68 Pac. 340, was overruled. In that case it was held that, where a mandamus was sought for the purpose of compelling the proper city officers to issue a warrant for the payment of an officer's salary the amount involved being less than $200, this court would take jurisdiction of an appeal in the case on the ground that mandamus is not a civil action at law for the recovery of money, within the meaning of the constitutional provision limiting the jurisdiction of this court. The court then returned to the announcement made in its former decisions, viz., *State ex rel. McIntyre v. Superior Court*, 21 Wash. 108, 57 Pac. 352, and *State ex rel. Wallace v. Superior Court*, 24 Wash. 605, 64 Pac. 778, where the doctrine was announced that the constitutional limitation applied to cases that were brought in the form of mandamus the same as any other civil action."

*Ball v. Clothier*, 34 Wash. 299, 75 Pac. 1099, in which we held that, where publication for "three consecutive weeks" is required, there must be a lapse of not less than twenty-one days between the day of first pub-

lication of the notice and the day of sale or other appointed act or event, and implied a preference for the statutory-week method of computation, criticised in *King County v. Seattle,* 7 Wn. (2d) 236, 239, 109 P. (2d) 530.

In *Pioneer Sand & G. Co. v. Seattle Const. & Drydock Co.,* 102 Wash. 608, 619, 173 Pac. 508, we criticised *Peterson v. Sloss,* 39 Wash. 207, 81 Pac. 744, as follows:

"In that case, the court, while applying the correct rule of law applicable to the facts, appears to have lost sight of our statute with reference to the conveying of an after-acquired title, and to have indulged in some expressions which seem to indicate that a conveyance made by a party before he acquires title to the property conveyed is without the chain of title, and the record thereof might not be constructive notice to persons dealing with the property. Of course, all such expressions in that opinion are obiter only, and no one should be misled thereby. It would seem to be necessary, in view of the statute referred to, for one to limit the search of the records only at his own peril. And assuredly he should be required to take notice of all instruments filed of record, executed by or on behalf of any person having preference rights or vested interests."

In *Puget Mill Co. v. Duecy,* 1 Wn. (2d) 421, 427, 96 P. (2d) 571, we criticised *State ex rel. Atkinson v. Evans,* 46 Wash. 219, 89 Pac. 565, 10 L. R. A. (N. S.) 1163, as follows:

"In *State ex rel. Atkinson v. Evans,* 46 Wash. 219, 89 Pac. 565, 10 L. R. A. 1163, there is language tending to commit us to the rule that the term 'minerals' as used in § 33 of Art. II, of our constitution means, at least primarily, all substances (other than the agricultural surface of the ground) which may be extracted from the earth for profit, whether it be solid as stone or liquid as, for example, petroleum oil, etc. That is a too liberal construction, as it is clear that the term 'minerals' does not include everything embraced in the

mineral kingdom as distinguished from what belongs to the animal and vegetable kingdoms; since, if it did, it would include the soil itself. See Annotation 17 A. L. R. 156 *et seq.* The better rule is that each case must be decided on the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor if it can be ascertained. The complaint in the case at bar does not disclose what the language of the contracts was other than that those contracts contained a provision reserving in the seller absolute rights to the 'minerals.'

"In determining the meaning of the term 'minerals,' as employed in grants and reservations, it is essential that the court have before it all of the provisions of the instrument making the conveyance and containing the reservation; otherwise, the intention of the parties as to what was being conveyed and what was reserved can not be ascertained."

In *State ex rel. Mountain Timber Co. v. Superior Court*, 77 Wash. 585, 590, 137 Pac. 994, we criticised as not legally accurate the statement in *Sultan R. & Timber Co. v. Great Northern R. Co.*, 58 Wash. 604, 109 Pac. 320, 1020, that "the constitution, art. 1, § 16, *grants* the right to take private property for private ways of necessity; . . ."

*Blinn v. Grindle*, 71 Wash. 120, 127 Pac. 840, criticised in *State ex rel. Dahl v. Superior Court*, 13 Wn. (2d) 626, 631, 126 P. (2d) 199, for unnecessary expression (dictum) respecting time action would be deemed commenced.

*In re Hoscheid's Estate*, 78 Wash. 309, 139 Pac. 61, criticised in *King County v. Seattle*, 7 Wn. (2d) 236, 239, 109 P. (2d) 530, respecting methods of computation when a statute requires publication of a notice once a week for a designated period.

*White v. Powers*, 89 Wash. 502, 154 Pac. 820, criticised in *Strandberg v. Stringer*, 125 Wash. 358, 365, 216 Pac. 25, as not in accord with the statute in holding

that it is necessary for the sheriff, when the mortgagor cannot be found in the county where the foreclosure proceedings are had, to make some form of return showing the fact before he can lawfully proceed with the sale.

*State ex rel. Secord v. Brinker,* 99 Wash. 222, 169 Pac. 317, criticises our holding in *State ex rel. Griffith v. Superior Court,* 96 Wash. 41, 164 Pac. 516, that certiorari lies to review the denial of a motion for change of venue of an action commenced in the wrong county to which the defendant was entitled as a matter of right.

*Fremont State Bank v. Vincent,* 112 Wash. 493, 192 Pac. 975, criticised in *Duke v. Johnson,* 123 Wash. 43, 56, 211 Pac. 710.

*Wyant v. Independent Asphalt Co.,* 118 Wash. 345, 203 Pac. 961, criticised in *King County v. Seattle,* 7 Wn. (2d) 236, 239, 109 P. (2d) 530.

*Devoto v. United Auto Transp. Co.,* 128 Wash. 604, 223 Pac. 1050, criticised in *Morehouse v. Everett,* 141 Wash. 399, 411, 252 Pac. 157.

*In re Hunter's Estate,* 147 Wash. 216, 265 Pac. 466, criticised in *In re McIntyre's Estate,* 178 Wash. 81, 85, 34 P. (2d) 432.

*Peizer v. Seattle,* 174 Wash. 95, 24 P. (2d) 444, criticised in *Crown v. Miller,* 199 Wash. 354, 364, 91 P. (2d) 713.

*State v. West,* 197 Wash. 595, 86 P. (2d) 192, criticised in *State v. Currie,* 200 Wash. 699, 702, 94 P. (2d) 754, for suggesting that in an exceptional case we may have the power to disregard one of our rules respecting the perfecting of an appeal in a criminal case.

*Foster v. Brady,* 198 Wash. 13, 86 P. (2d) 760, criticised in *In re Schafer's Estate,* 8 Wn. (2d) 517, 521, 113 P. (2d) 41. *Boyer v. Fowler,* 1 Wash. Terr. 101, questioned in *Meigs v. Keach,* 1 Wash. Terr. 305, 307. *Brown*

*Bros. & Co. v. Forest,* 1 Wash. Terr. 201, questioned in *Morgan v. Bankers' Trust Co.,* 63 Wash. 476, 479, 115 Pac. 1047. *Andrews v. Andrews,* 3 Wash. Terr. 286, 14 Pac. 68, questioned in *Schramm v. Steele,* 97 Wash. 309, 312, 166 Pac. 634.

*Cline v. Mitchell,* 1 Wash. 24, 23 Pac. 1013, criticised in *Stone-Easter v. Seattle,* 121 Wash. 520, 526, 209 Pac. 687, 215 Pac. 56, on question whether sureties on cost bond in the superior court are necessary parties to an appeal by the adverse party from a judgment in favor of the principal on the cost bond and is such surety entitled to notice of appeal.

*Brown v. Rauch,* 1 Wash. 497, 20 Pac. 785, challenged in *Washington Trust Co. v. Local etc. Tel. Co.,* 73 Wash. 627, 629, 132 Pac. 398, as opposed to the great weight of authority.

*Northern Pac. R. Co. v. O'Brien,* 1 Wash. 599, 21 Pac. 32, criticised (in fact, overruled) by *Grim v. Olympia Light & Power Co.,* 42 Wash. 119, 123, 84 Pac. 635, where we held that a motorman assumes the risk of injury from collision with another streetcar happening through failure of the other motorman to stop the car upon a foggy morning, where fogs were of frequent occurrence.

*Anderson v. State,* 2 Wash. 183, 26 Pac. 267, questioned in *State v. Armstrong,* 87 Wash. 275, 277, 151 Pac. 775, as having long since ceased to be an authority and in conflict with our repeated holdings that affidavits in support of a motion for a new trial cannot be considered upon appeal unless they are made a part of the record by a bill of exceptions or a statement of facts.

*Wilson v. Seattle,* 2 Wash. 543, 27 Pac. 474, questioned in *Seattle v. Doran,* 5 Wash. 482, 484, 32 Pac. 105, 1002.

*Marston v. Humes,* 3 Wash. 267, 28 Pac. 520, ques-

tioned in *In re Shilshole Avenue,* 101 Wash. 136, 138, 172 Pac. 338, and held to have "been many times overruled" if taken for authority for the proposition that, outside of the general statute of limitations, there is no limitation as to the time within which a party may be relieved from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect.

Holding in *North Yakima v. Superior Court,* 4 Wash. 655, 30 Pac. 1053, respecting venue of actions against a county, questioned in *State ex rel. King County v. Superior Court,* 104 Wash. 268, 269, 176 Pac. 352.

*In re Barker's Estate,* 5 Wash. 390, 31 Pac. 976, questioned in *In re Harper's Estate,* 168 Wash. 98, 102, 10 P. (2d) 991, 15 P. (2d) 1119, as valid authority as it was expressly overruled (as were *Bower v. Bower,* 5 Wash. 225, 31 Pac. 598; *Hill v. Hill,* 7 Wash. 409, 35 Pac. 360; and *Purdy v. Davis,* 13 Wash. 164, 42 Pac. 520), in *Gehlen v. Gehlen,* 77 Wash. 17, 137 Pac. 312, on question whether children of a testator can be disinherited by naming them as a class, instead of naming them specifically by each of their individual names, or by terms of individual identification.

In *Welch v. Creech,* 88 Wash. 429, 442, 153 Pac. 355, we reviewed *McKenzie v. Oregon Imp. Co.,* 5 Wash. 409, 31 Pac. 748, and said:

"That case was a civil action upon a promissory note. The execution of the note was admitted. The defendant tendered the issue of no consideration. Upon this sole issue he necessarily had the burden of proof, and was bound to sustain it by a preponderance of the evidence. It was the affirmative of the only issue before the court.

"In the *McKenzie* case, the execution of the note was admitted. In this case, an unlawful killing is not admitted. The presumption did not operate as an admission. An admission is evidence. A presumption is not.

An admission changes the burden of proof in the sense that the plea of confession and avoidance must be sustained by the weight or preponderance of evidence. A presumption simply changes the order of proof to the extent that one upon whom it bears must meet or explain it away. When such explanation is made, the duty is upon a plaintiff to take up the burden which the law has cast upon him and sustain the issue by a preponderance of the evidence. It neither depends upon evidence nor is it sustained by evidence. It follows that, when the defendant has balanced that presumption by a reasonable and unimpeached explanation, he is entitled to a verdict, unless there is a showing by independent testimony of an unlawful killing. Wharton, Criminal Evidence (10th ed.), § 334.

"The distinction between burden of proof and preponderance of evidence is well stated in the case of *Smith Sand & Gravel Co. v. Corbin,* 75 Wash. 635, 135 Pac. 472, where it is said:

" '*Prima facie* case means only that the case has proceeded upon sufficient proof to that stage where it must be submitted to the jury, and not decided against the plaintiff as a matter of law. A *prima facie* case does not necessarily mean that judgment goes in favor of the plaintiff as a matter of law. The jury are still the judges of the sufficiency of the showing to call for a verdict in plaintiff's favor, and where there is no affirmative defense, strictly speaking, the jury are to measure plaintiff's rights, having in view that he has the burden of proof.'

"In this case there is no affirmative defense, strictly speaking. The general issue is whether the act of killing was unlawful, and the defendant had the right, under that general issue, to submit any evidence which tended to sustain his defense, whether it be *non est factum* or self-defense. To repeat, it is only in those cases where there is an affirmative defense resting upon facts which are not dependent upon, or do not grow out of, the *res gestae,* and which are pleaded as a separate and affirmative defense, that a defendant is bound to sustain his case by a preponderance of the evidence. In either a civil or criminal case, a defend-

ant is never called upon to prove by a preponderance anything that is competent to be proved under the general issue."

The holding in *Traders' Bank of Tacoma v. Bokien,* 5 Wash. 777, 32 Pac. 744, that notice of appeal must be served on all parties who appear in an action was questioned—*overruled*—in *Deno v. Standard Furniture Co.,* 190 Wash. 1, 3, 66 P. (2d) 1158.

The rule enunciated in *Wood v. Nichols,* 6 Wash. 96, 32 Pac. 1055, 35 Pac. 140, that a plaintiff could not maintain a suit to rescind a sale of real property, because he had not tendered back all of the money he had received on the purchase price, was *sub silentio* overruled in subsequent cases, and again questioned in *Cain v. Norman,* 140 Wash. 31, 35, 248 Pac. 71.

Our decision in *State ex rel. Stearns v. Smith,* 6 Wash. 496, 33 Pac. 974, which construes the meaning of the term "state officers," as used in § 4, Art. IV, of the constitution, to include only those heads of executive departments recognized *eo nomine* as executive officers in Art. III of the constitution, is questioned in *State ex rel. North Coast Fire Ins. Co. v. Schively,* 68 Wash. 148, 149, 122 Pac. 1020, and the construction held too narrow.

In *McDonough v. Craig,* 10 Wash. 239, 245, 38 Pac. 1034, we questioned the conclusions announced in *Commercial Bank v. Scott,* 6 Wash. 499, 33 Pac. 829, 34 Pac. 434, and held that, in an action upon a negotiable promissory note executed by the husband alone for what is alleged to be a community debt, the wife is a proper party defendant; and, upon a verdict or finding in favor of the plaintiff upon such issue, he is entitled to have the debt adjudged as that of the community.

*Moore v. Brownfield,* 7 Wash. 23, 34 Pac. 199, and *Johnson v. Conner,* 48 Wash. 431, 93 Pac. 914, which

were overruled by *McNaught-Collins Imp. Co. v. May,* 52 Wash. 632, 101 Pac. 237, and *State v. Sturtevant,* 76 Wash. 158, 135 Pac. 1035, 138 Pac. 650, questioned by *Skansi v. Novak,* 84 Wash. 39, 46, 146 Pac. 160, in which we held that an entry on and possession of land, under the mistaken belief that it is public land, will not have the effect of disseizing the true owner, as such possession is subservient to the public right; hence, it is not hostile or adverse to the true owner.

In *Philips & Co. v. Bergman,* 130 Wash. 346, 347, 227 Pac. 321, in which we held that the husband's contract to pay an agent's commission for securing a loan on community property to pay a community debt, the loan also being a community debt, is binding upon the wife as a community debt, we questioned *McGlauflin v. Merriam,* 7 Wash. 111, 34 Pac. 561, which was *sub silentio* overruled by *Philips & Co. v. Langlow,* 55 Wash. 385, 104 Pac. 610, and *Philips & Co. v. Mercy,* 126 Wash. 376, 218 Pac. 4, 222 Pac. 902.

*Romine v. State,* 7 Wash. 215, 34 Pac. 924, in which we held that, when the state prosecutes an appeal from an adverse judgment in the trial court, it is liable for costs if the appeal proves unsuccessful, questioned—overruled—by *Washington Recorder Pub. Co. v. Ernst,* 1 Wn. (2d) 545, 551, 97 P. (2d) 116, in which we held that, in the absence of a statute creating such liability, the state is not liable for costs in actions to which it is a party in its own courts.

*Hill v. Hill,* 7 Wash. 409, 35 Pac. 360, questioned—overruled—by *In re Harper's Estate,* 168 Wash. 98, 102, 10 P. (2d) 991, 15 P. (2d) 1119. The question raised was whether the children of a testator may be disinherited by naming them as a class.

*Guley v. Northwestern Coal & Transp. Co.,* 7 Wash. 491, 35 Pac. 372, criticised as follows by *Money v. Seattle R. & S. R. Co.,* 59 Wash. 120, 124, 109 Pac. 307, on

the question of right of this court to reverse a case for refusal of a new trial on the ground of insufficiency of the evidence:

"The *Guley* case has been criticized in this court in respect to the question we are considering until it is no longer authority on the subject. Where there is a substantial conflict in the evidence, and the trial court has refused a new trial and has instructed the jury that the weight of the evidence does not necessarily depend upon the relative number of witnesses testifying for or against a given issue, and that they are the sole judges of the credibility of the witnesses and the weight of the testimony, it would involve a legal absurdity for this court to reverse the judgment entered upon the verdict on the ground of the insufficiency of the evidence. To believe one witness and to disbelieve another or others is one of the admitted functions of the jury, and in this respect it cannot be censored or controlled by the courts. While it is true that verdicts must be based upon evidence, it is likewise true that the trial judge is not required to grant a new trial in every case where his opinion upon the facts differs from the opinion of the jury as expressed in the verdict."

See, also, *Armstrong v. Modern Woodmen of America,* 93 Wash. 352, 354, 160 Pac. 946, which criticises *Guley v. Northwestern Coal & Transp. Co., supra,* as follows:

"It is true that in that case is found a declaration that where the clear weight of the evidence is with either side, there is no substantial conflict, and the court should take the decision of the case from the jury, but that decision is no longer authority."

*Baer v. Choir,* 7 Wash. 631, 32 Pac. 776, 36 Pac. 286, criticised by *Felker v. New Whatcom,* 16 Wash. 178, 184, 47 Pac. 505, on question whether it is necessary that property assessed for a street improvement should be listed in the name of the owner.

*State v. Butler,* 8 Wash. 194, 35 Pac. 1093, 40 Am. St. 900, 25 L. R. A. 434, in which we held that solicitation to commit adultery is not indictable as an attempt to commit the crime of adultery, cited as analogous and sustaining authority in *State v. Awde,* 154 Wash. 463, 282 Pac. 908, where we held there cannot be any such offense under our statute (Laws of 1909, p. 955, § 217, and p. 893, § 12) as an attempt to become a common gambler.

*Webb v. Spokane County,* 9 Wash. 103, 37 Pac. 282, which held that a physician, employed by the county commissioners for a term of one year to attend the poor of the county, and who had accepted the employment and entered upon the discharge of his duties, could not be discharged by the county, even if the employment extended beyond the terms of the commissioners, criticised by *King County v. U. S. M. & S. Ins. Co.,* 150 Wash. 626, 633, 274 Pac. 704.

*Curry v. Catlin,* 9 Wash. 495, 37 Pac. 678, 39 Pac. 101, criticised by *Merritt v. Newkirk,* 155 Wash. 517, 524, 285 Pac. 442, in matter of right of a judgment creditor of the husband to maintain a proceeding to make the judgment conclusive against the marital community.

*Compton v. Westerman,* 150 Wash. 391, 396, 273 Pac. 524, reiterates rule enunciated in *Ward v. Magaha,* 71 Wash. 679, 129 Pac. 395 (which overruled *Neis v. Farquharson,* 9 Wash. 508, 37 Pac. 697), that the bar of the statute of nonclaim in the settlement of estates may be raised at any time.

*McMaster v. Advance Thresher Co.,* 10 Wash. 147, 38 Pac. 760, overruled by *State ex rel. Seattle Baseball Club v. Superior Court,* 193 Wash. 326, 75 P. (2d) 929, and criticised by *State ex rel. U. S. Trust Co. v. Phillips,* 12 Wn. (2d) 308, 319, 121 P. (2d) 360, in which we held that, when a corporation has been sued in the wrong county, the corporation should not seek a

writ of prohibition against the court wherein the action was erroneously commenced, but should seasonably apply for a change of venue to the proper county, under the same rules as are applicable to a natural person.

*Woodbury v. Henningsen,* 11 Wash. 12, 39 Pac. 243, which was overruled *sub silentio* by *Teater v. Kings,* 35 Wash. 138, 76 Pac. 688, and *Bain v. Thoms,* 44 Wash. 382, 87 Pac. 504, on the question of what constitutes a general and what constitutes a special appearance, criticised by *Matson v. Kennecott Mines Co.,* 101 Wash. 12, 23, 171 Pac. 1040.

*Glover v. Rochester-German Ins. Co.,* 11 Wash. 143, 39 Pac. 380, which held, in the matter of statutory arbitration and award, that an independent suit would lie to set aside a filed award and to enforce demands in disregard of it, criticised by *State ex rel. Fancher v. Everett,* 144 Wash. 592, 595, 258 Pac. 486, which states that the case was overruled by *Dickie Mfg. Co. v. Sound Const. & Engr. Co.,* 92 Wash. 316, 159 Pac. 129.

*Dewey v. South Side Land Co.,* 11 Wash. 210, 39 Pac. 368, questioned—overruled—by *Deno v. Standard Furniture Co.,* 190 Wash. 1, 3, 66 P. (2d) 1158, which modifies the rule that notice of appeal must be served on all parties who appear in the action.

*Washington Cent. Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366, which enunciated the rule that, where one is in a position to ascertain the truthfulness of representations made by the defendant, and no fiduciary relationship exists, it is the plaintiff's duty to ascertain whether the representations are true, questioned—overruled—by *Fischer v. Hillman,* 68 Wash. 222, 226, 122 Pac. 1016 (action for rescission of land contracts on ground of fraud), where we held that that rule had been mitigated by our later decisions, and,

" . . . as we view it now, was probably not fully justified by the authorities extant at the time it was announced. It has been supplanted by the more reasonable and humane rule that a party will not be allowed to shield himself because the party with whom he was dealing was careless or too confiding, and that, while the state cannot stand *in loco parentis* to all its citizens, the crafty and designing will not be allowed, by cunning artifice tending to deceive the simple minded, to rob them of what justly belongs to them."

*Elderkin v. Peterson,* 8 Wash. 674, 36 Pac. 1089, and *Birge v. Browning,* 11 Wash. 249, 39 Pac. 643, which sustain the doctrine of nonliability of the subscriber even as against the rights of creditors unless the full amount of the ·capital stock had been subscribed, and were *sub silentio* overruled by *Cox v. Dickie,* 48 Wash. 264, 93 Pac. 523, questioned by *National Realty Co. v. Neilson,* 73 Wash. 89, 95, 131 Pac. 446.

*Hays v. Dennis,* 11 Wash. 360, 39 Pac. 658, questioned by *Strickland v. Rainier Golf & Country Club,* 156 Wash. 640, 643, 287 Pac. 900.

*Willamette Casket Co. v. Cross Undertaking Co.,* 12 Wash. 190, 40 Pac. 729, questioned, as follows, by *Olsen v. Smith,* 84 Wash. 228, 231, 146 Pac. 572:

"The appellant's argument, based upon our recent decision in *Pacific Coast Biscuit Co. v. Perry,* 77 Wash. 352, 137 Pac. 483, overruling *Willamette Casket Co. v. Cross Undertaking Co.,* 12 Wash. 190, 40 Pac. 729, is therefore stillborn. It lacks the vitalizing element of analogy in the relation of the parties there and the parties here to the respective subject-matters. In the *Perry* case, we held that, though Rem. & Bal. Code, § 3660 (P. C. 340, § 67), provides that a chattel mortgage is void as against creditors unless recorded, an unrecorded chattel mortgage is valid as between the parties and creditors subsequent to its execution who had acquired no specific lien upon the property up to the time when the mortgage was finally filed for record. This, on the specific ground that the belated filing

of the old mortgage had the same effect, as against general creditors, that a new mortgage executed and filed on that day would have had. It therefore took precedence over the claims of general creditors who had acquired no lien upon any specific property, though they had extended a general credit in the interval between the making and the filing of the chattel mortgage. The clear inference from this reasoning is that had these general creditors acquired, in the interim, any sort of lien upon the specific property, they would have been preferred to the lien of the chattel mortgage. In the case here, the laborers had acquired, in the interim, subsisting rights of liens upon the specific property. They do not fall within the statutory nonpreferred class of lienless general creditors."

*Bower v. Bower,* 5 Wash. 225, 31 Pac. 598; *In re Barker's Estate,* 5 Wash. 390, 31 Pac. 976; *Hill v. Hill,* 7 Wash. 409, 35 Pac. 360; and *Purdy v. Davis,* 13 Wash. 164, 42 Pac. 520, overruled by *Gehlen v. Gehlen,* 77 Wash. 17, 137 Pac. 312. See *In re Harper's Estate,* 168 Wash. 98, 102, 10 P. (2d) 991, 15 P. (2d) 1119.

*State v. Murphy,* 13 Wash. 229, 43 Pac. 44, overruled by *State v. Ash,* 68 Wash. 194, 122 Pac. 995, 39 L. R. A. (N. S.) 611, and questioned by *State v. Hiatt,* 187 Wash. 226, 236, 60 P. (2d) 71, where we held that a verdict of guilty of manslaughter is not an acquittal of the higher degrees of homicide, and, on reversal, the defendant may be again tried.

In *Olive Co. v. Meek,* 103 Wash. 467, 468, 175 Pac. 33, (Judge Holcomb speaking for the court) we held, questioning *Powell v. Pugh,* 13 Wash. 577, 43 Pac. 879, that the principle of *stare decisis* will not be invoked when to do so perpetuates injustice and impairs statutory rights of property. In *Culliton v. Chase,* 174 Wash. 363, 25 P. (2d) 81, this court, speaking through Judge Holcomb, said:

"In future cases, even a dissenting justice should be bound by the decision of the majority until and unless

authoritatively overruled or reversed by some higher tribunal."

See *Jensen v. Henneford*, 185 Wash. 209, 225, 53 P. (2d) 607.

In *Weiss v. Swedish Hospital*, 16 Wn. (2d) 446, 133 P. (2d) 978, we refused to abrogate the judicially promulgated rule as to nonliability of hospitals for torts, despite the *clear, cogent, convincing reasons* advanced for such abrogation in concurring opinion in *Miller v. Sisters of St. Francis*, 5 Wn. (2d) 204, 105 P. (2d) 32. The opinion was filed too late in 1941 to write an opinion and bring the question to attention of the 1941 session of the legislature. The opinion was not written until too late in 1943 to afford time for consideration of that important question by the 1943 session of the legislature.

In *Tacoma v. Fox*, 158 Wash. 325, 290 Pac. 1010, we overruled *State ex rel. Richey v. Smith*, 42 Wash. 237, 84 Pac. 851, 114 Am. St. 114, 7 Ann. Cas. 577, 5 L. R. A. (N. S.) 674 (written a quarter of a century earlier), and held that a city ordinance which prohibited engaging in the trade of a journeyman plumber without first obtaining a license upon establishing competency before an examining board, is within the police power of the city as a regulation for the preservation of the health and welfare of the public.

In *Parrish v. West Coast Hotel Co.*, 185 Wash. 581, 55 P. (2d) 1083, 300 U. S. 379, 81 L. Ed. 703, 57 S. Ct. 578, we sustained the constitutionality of Laws of 1913, chapter 174, fixing a minimum wage for women and children, in defiance of the United States supreme court's declaration that such statutes were invalid as they authorized an unconstitutional interference with the freedom of contract.

*Powell v. Superior Portland Cement, Inc.*, 15 Wn. (2d) 14, 129 P. (2d) 536, overruled our prior opinions (see

*Hardin v. Olympic Portland Cement Co.,* 89 Wash. 320, 154 Pac. 450, and *Bartel v. Ridgefield Lbr. Co.,* 131 Wash. 183, 229 Pac. 306, in which we reviewed the authorities) and, contrary to the so-called (the numerical) weight of authority, held that one who purchases property in an industrial community is not entitled to compensation because of dust inseparable from industrial activity in that community.

In *State v. Much,* 156 Wash. 403, 287 Pac. 57, followed by *State v. McCollum,* 17 Wn. (2d) 85, 136 P. (2d) 165, we received in evidence articles procured by the officers without the authority of a search warrant in contravention of the defendant's constitutional rights (Washington state const., Art. I, § 7), and in defiance of the statute (Rem. Rev. Stat., § 2240-1 [P. C. § 9358-1]), which prohibits the entry and search of any private dwelling-house or place of residence without the authority of a lawfully issued search warrant. Our research has not disclosed that any English speaking court, other than this court, has ever held, in the face of such constitutional and/or statutory prohibitions as ours, that the introduction in evidence of articles obtained as in the two cases cited, was not prejudicially erroneous, entitling the defendant to a new trial.

*Safeway Stores v. Retail Clerks' Union,* 184 Wash. 322, 51 P. (2d) 372; *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P. (2d) 397; *Adams v. Building Service Employees Union,* 197 Wash. 242, 84 P. (2d) 1021; *Fornili v. Auto Mechanics' Union,* 200 Wash. 283, 93 P. (2d) 422; *United Union Brewing Co. v. Beck,* 200 Wash. 474, 93 P. (2d) 772; *Bloedel Donovan Lbr. Mills v. International Wood Workers,* 4 Wn. (2d) 62, 102 P. (2d) 270; and *Shively v. Garage Employees,* 6 Wn. (2d) 560, 108 P. (2d) 354, which held contrary to *Meadowmoor Dairies v. Milk Wagon Drivers' Union,* 371 Ill. 377, 21 N. E. (2d) 308, and *Swing v. American*

*Federation of Labor,* 372 Ill. 91, 22 N. E. (2d) 857, 312 U. S. 321, 61 S. Ct. 568, were overruled by *O'Neil v. Building Service etc. Union,* 9 Wn. (2d) 507, 115 P. (2d) 662.

*Purdy v. State,* 199 Wash. 638, 92 P. (2d) 880, and the cases upon which it rests (*Snively v. State,* 167 Wash. 385, 9 P. (2d) 773; *Smith v. State,* 184 Wash. 58, 50 P. (2d) 32; *Lefevre v. Washington Monument & Cut Stone Co.,* 195 Wash. 537, 81 P. (2d) 819; *Best v. State,* 153 Wash. 168, 279 Pac. 388; and *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114), overruled by *Washington Security Co. v. State,* 9 Wn. (2d) 197, 114 P. (2d) 965.

*Cerf, Schloss & Co. v. Wallace,* 14 Wash. 249, 44 Pac. 264, questioned by *Armour & Co. v. Becker,* 167 Wash. 245, 250, 9 P. (2d) 63.

*Tacoma v. Krech,* 15 Wash. 296, 46 Pac. 255, 34 L. R. A. 68, overruled by *State v. Nichols,* 28 Wash. 628, 69 Pac. 372, which held Sunday laws were valid, and criticised by *Seattle v. Gervasi,* 144 Wash. 429, 430, 258 Pac. 328.

*Cornell University v. Denny Hotel Co.,* 15 Wash. 433, 46 Pac. 654, which held that notice of appeal must be served on all parties who appeared in the action, questioned—overruled—by *Deno v. Standard Furniture Co.,* 190 Wash. 1, 3, 66 P. (2d) 1158.

*Jones v. St. Paul M. & M. R. Co.,* 16 Wash. 25, 47 Pac. 226, questioned—overruled—by *Sholin v. Skamania Boom Co.,* 56 Wash. 303, 308, 105 Pac. 632. We said:

"In *Jones v. St. Paul M. & M. R. Co., supra,* this court followed the extreme views of the supreme judicial court of Massachusetts, and held that the owner of a steamboat accustomed to navigate a river could not recover damages caused by an obstruction to navigation, compelling him to tie up his boat for several days. This case is in conflict with many decisions of this court and is opposed to the weight of authority."

*State ex rel. Denny v. Bridges,* 19 Wash. 44, 52 Pac.
326, 40 L. R. A. 593, criticised by *State ex rel. L. A.
Conner Co. v. Superior Court,* 184 Wash. 127, 133, 50
P. (2d) 527, in which we stated the *Denny* case was
expressly overruled by *State ex rel. Bloedel-Donovan
Lbr. Mills v. Savidge,* 144 Wash. 302, 258 Pac. 1.

*State ex rel. Grinsfelder v. Spokane St. R. Co.,* 19
Wash. 518, 53 Pac. 719, 67 Am. St. Rep. 739, 41 L. R. A.
515, questioned by *Schwede v. Hemrich Bros. Brewing
Co.,* 29 Wash. 21, 26, 69 Pac. 362.

*State v. McCormick,* 20 Wash. 94, 54 Pac. 764, where
we held that a new trial should be granted because,
with the consent of the court, the bailiff was permitted
to hand a juror two unopened letters, questioned by
*State v. Adamo,* 128 Wash. 419, 423, 223 Pac. 9, as hav-
ing been, in effect, repudiated in *State v. Pepoon,* 62
Wash. 635, 114 Pac. 449.

In *Catlin v. Mills,* 140 Wash. 1, 5, 247 Pac. 1013, we
questioned *Stubblefield v. McAuliff,* 20 Wash. 442, 55
Pac. 637, and held that a payment of interest by the
husband upon a community note after the statutory
period of limitation had run revives the note as against
the community in view of Rem. Comp. Stat., §§ 6892,
6893, conferring upon the husband the management
and control of the community property and making
him the community agent. We said:

"Some justification for the contrary view is discover-
able in the early case in this court of *Stubblefield v.
McAuliff,* 20 Wash. 442, 55 Pac. 637, the syllabus of
which makes the statement that where a note secured
by a mortgage on community realty has been executed
by a man and wife, payments of interest by the hus-
band without the authority of the wife, after maturity
of the note, does not extend the time of running of the
statute of limitations as against her. The opinion it-
self does not justify this syllabus, for, from the opinion,
it appears that the note was the separate obligation of

the husband and that the community had mortgaged community property to secure that obligation, and that what was decided was that, where the property of the community had been mortgaged to secure the separate debt of the husband, the wife then occupied merely the position of a surety and was not bound by the husband's act in renewing his separate obligation. That conclusion may be correct. But in so far as there may be contained in the *Stubblefield* case language covering the situation in the case at bar, such language does not express the opinion of this court and the case is no authority for a rule differing from that stated in this opinion."

*Kiser v. Douglas County,* 70 Wash. 242, 243, 126 Pac. 622, criticises *Hoexter v. Judson,* 21 Wash. 646, 59 Pac. 498, and *Rose v. Pierce County,* 25 Wash. 119, 64 Pac. 913, for holding that a claim or demand of a purely equitable nature and upon which a prayer for a restraining order is based, requires presentation to the county commissioners for allowance before any action can be brought thereon.

*White v. Miley,* 137 Wash. 80, 84, 241 Pac. 670 (an action in replevin), criticises *Dow v. Dempsey,* 21 Wash. 86, 57 Pac. 355, as follows:

"It is said, however, by the respondents that, in no event, will this replevin action lie, for the reason that the appellant knew that the respondents did not have possession of the hooks when this action was brought; and the case of *Dow v. Dempsey,* 21 Wash. 86, 57 Pac. 355, is cited to that effect. . . . This court has modified the rule as originally announced in the case of *Dow v. Dempsey, supra,* and has held in *Andrews v. Hoeslich,* 47 Wash. 220, 91 Pac. 772, 125 Am. St. 896, 18 L. R. A. (N. S.) 1265, and *Gourley v. Smith,* 78 Wash. 286, 139 Pac. 58, in the former of which cases many authorities are cited,

" ' . . . that the rule that an action to recover the possession of personal property does not lie against one not in possession of the property does not obtain where the defendant had been in possession and wrong-

fully disposed of the property prior to the commencement of the action, without the knowledge of the plaintiff at the time.' "

*McDonald v. Davey,* 22 Wash. 366, 60 Pac. 1116, *sub silentio* overruled by *Armour & Co. v. Western Const. Co.,* 36 Wash. 529, 78 Pac. 1106, questioned by *Forsyth v. New York Indemnity Co.,* 159 Wash. 318, 323, 293 Pac. 284. See, also, *Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767, and *Title G. & S. Co. v. First Nat. Bank,* 94 Wash. 55, 162 Pac. 23.

*Northern Pac. R. Co. v. Nelson,* 22 Wash. 521, 61 Pac. 703, questioned by *State ex rel. Roseburg v. Mohar,* 169 Wash. 368, 376, 13 P. (2d) 454, in the following language:

"The case cited does support appellant's contention, but, unfortunately for him, that case was reversed on appeal to the United States supreme court, where it was held that the date of filing the map of *definite location,* and not the date of filing the map of *general route,* marked the time as of which rights to the property were to be determined. *Nelson v. Northern Pacific Railway Co.,* 188 U. S. 108, 47 L. Ed. 506, 23 S. Ct. 302. We are, of course, controlled by that decision."

*Bancroft-Whitney Co. v. Gowan,* 24 Wash. 66, 63 Pac. 1111, *sub silentio* overruled by *Nettleton v. Evans,* 67 Wash. 227, 121 Pac. 54, and *Roche Fruit & Produce Co. v. Vaught,* 143 Wash. 601, 255 Pac. 955, questioned, and *expressly* overruled, by *Spokane Security Finance Co. v. Crowley Lbr. Co.,* 152 Wash. 697, 698, 279 Pac. 103, in which we held that a chattel mortgage, giving the mortgagee a present right of possession, does not entitle him to maintain an action of replevin; however, a mortgagee of chattels may maintain an action for the conversion of the mortgaged property.

*State v. Boyce,* 24 Wash. 514, 64 Pac. 719, and *State v. Farris,* 26 Wash. 205, 66 Wash. 412, questioned by

*State v. Riley,* 36 Wash. 441, 447, 78 Pac. 1001, in which we held that jurors who have formed opinions regarding the guilt or innocence of the accused, which it would take evidence to remove, are disqualified, notwithstanding that they can, or believe they can, disregard such opinions and try the case according to the law and the evidence, and overruling challenges for cause to such jurors deprives the accused of a trial before a fair and impartial jury.

*State v. Bliss,* 27 Wash. 463, 68 Pac. 87, *sub silentio* overruled by *State v. Butts,* 42 Wash. 455, 85 Pac. 33, and *State v. McCormick,* 56 Wash. 469, 105 Pac. 1037, questioned and *expressly* overruled by *State v. Laws,* 61 Wash. 533, 534, 112 Pac. 488, in which we held that an information is not bad for duplicity in that it charges the stealing of specified articles from the persons of, and belonging to, two parties, where *prima facie,* both occurred at the same time and place and constituted but a single transaction.

*State v. Farris,* 26 Wash. 205, 66 Pac. 412, questioned by *State v. Riley,* 36 Wash. 441, 447, 78 Pac. 1001.

*Copland v. Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769, and *State ex rel. Arnold v. Mitchell,* 55 Wash. 513, 104 Pac. 791, questioned by *In re Peterson's Estate,* 182 Wash. 29, 32, 45 P. (2d) 45, as having been overruled, as pointed out in *Holzman v. Spokane,* 91 Wash. 418, 157 Pac. 1086.

*In re Alfstad's Estate,* 27 Wash. 175, 67 Pac. 593, questioned by *In re Kelley,* 193 Wash. 109, 113, 74 P. (2d) 904.

*State ex rel. Dudley v. Daggett,* 28 Wash. 1, 68 Pac. 340, in which the court assumed jurisdiction of an appeal from a judgment in a mandamus action where the amount was less than two hundred dollars, overruled by *State ex rel. Plaisie v. Cole,* 40 Wash. 474,

82 Pac. 749, and questioned by *Smith v. Baughman,* 192 Wash. 51, 72 P. (2d) 295.

*In re Macdonald's Estate,* 29 Wash. 422, 69 Pac. 1111, which held that, where an estate is being administered under a nonintervention will, it was not a condition precedent to a suit to file a claim against an estate, questioned by *Horton v. McCord,* 158 Wash. 563, 566, 291 Pac. 717, as of no controlling force under our probate code of 1917 as pointed out in *Davis v. Shepard,* 135 Wash. 124, 237 Pac. 21. See *Alexander v. Highfill,* 118 Wash. Dec. 682, 140 P. (2d) 277.

*Walters v. Field,* 29 Wash. 558, 70 Pac. 66, criticised by *Matson v. Kennecott Mines Co.,* 101 Wash. 12, 24, 171 Pac. 1040.

*Burgert v. Caroline,* 31 Wash. 62, 71 Pac. 724, 96 Am. St. 889, *sub silentio* overruled by *Vietzen v. Otis,* 63 Wash. 411, 115 Pac. 858, and questioned by *Olson v. Chapman,* 4 Wn. (2d) 522, 535, 104 P. (2d) 344.

In *Hynek v. Seattle,* 7 Wn. (2d) 386, 111 P. (2d) 247, the dissenting judges contended that the majority abandoned the rule that where, on a controverted question of fact, there is evidence, or there are justifiable inferences from evidence, upon which reasonable minds might reach different conclusions, the question becomes one of fact for the jury, and not for the court to decide and disregarded *Rieger v. Kirkland,* 7 Wn. (2d) 326, 111 P. (2d) 241; Art. I, § 21, state constitution; *Hoyer v. Spokane United Railways,* 153 Wash. 450, 279 Pac. 742; *Hohman v. Seattle,* 179 Wash. 663, 38 P. (2d) 242; and other opinions of this court. See *Hines v. Chicago, M. & St. P. R. Co.,* 105 Wash. 178, 177 Pac. 795; *Poland v. Seattle,* 200 Wash. 208, 93 P. (2d) 379; *Beck v. Dye,* 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022.

*State v. Croney,* 31 Wash. 122, 71 Pac. 783, questioned by *State v. Riley,* 36 Wash. 441, 447, 78 Pac.

1001, in which we stated that we had not intended to lay down the rule that jurors who had both formed and expressed an opinion upon the question of the guilt of the defendant were not subject to challenge for actual bias.

. *Bolton v. LaCamas Water Power Co.*, 10 Wash. 246, 38 Pac. 1043, which held that the homestead was the separate property of the surviving spouse to whom patent was issued, we stated in *Davies v. Metropolitan Life Ins. Co.*, 189 Wash. 138, 140, 63 P. (2d) 529, was

". . . for a long time of doubtful authority, for possibly two reasons: (a) It was handed down by a divided court; (b) subsequently, in two cases (*Ahern v. Ahern*, 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912; *Cox v. Tompkinson*, 39 Wash. 70, 80 Pac. 1005), the court held homesteads to be community property under states of facts very similar to those with which we are here confronted.

"But in *Cunningham v. Krutz*, 41 Wash. 190, 83 Pac. 109, 7 L. R. A. (N. S.) 967, this court again held that a homestead was the separate property of the surviving husband, to whom patent issued. This decision was based primarily upon the decision of the United States supreme court in *McCune v. Essig*, 199 U. S. 382, 26 S. Ct. 78."

*Ahern v. Ahern*, 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912, and *Cox v. Tompkinson*, 39 Wash. 70, 80 Pac. 1005, in conflict with *Bolton v. LaCamas Water Power Co.*, 10 Wash. 246, 38 Pac. 1043, and *Cunningham v. Krutz*, 41 Wash. 190, 83 Pac. 109, 7 L. R. A. (N. S.) 967. See *Davies v. Metropolitan Life Ins. Co.*, 189 Wash. 138, 140, 63 P. (2d) 529.

In *Stone-Easter v. Seattle*, 121 Wash. 520, 526, 209 Pac. 687, 215 Pac. 56, we held that, the supreme court not having appellate jurisdiction where the original amount in controversy does not exceed two hundred dollars, sureties on a cost bond in the superior court

for two hundred dollars, not being entitled to appeal to the supreme court in case of judgment against them, are not necessary parties to an appeal by the adverse party from a judgment in favor of the principal on the cost bond. We criticised prior cases as follows:

"It must be conceded that the decisions heretofore rendered by this court in the following cost bond cases, if to be followed, without thought of the constitutional limitation upon the appellate jurisdiction of this court, are all but conclusive in support of the decision rendered by the Department of this court on October 13, 1922. *Cline v. Mitchell,* 1 Wash. 24, 23 Pac. 1013, involving the claimed rights of sureties upon a justice court cost bond for the sum of $100, as prescribed by § 1859, Code of 1881, then in force; and *Pierce v. Commercial Investment Co.,* 31 Wash. 655, 72 Pac. 473; *O'Connor v. Lighthizer,* 34 Wash. 152, 75 Pac. 643; *Aetna Ins. Co. v. Thompson,* 34 Wash. 610, 76 Pac. 105; *Brockway v. Abbott,* 34 Wash. 700, 74 Pac. 1069; *Trumbull v. Jefferson County,* 37 Wash. 604, 79 Pac. 1105; and *Shippen v. Shippen,* 91 Wash. 610, 158 Pac. 247, involving superior court cost bonds securing costs 'not exceeding the sum of two hundred dollars,' as provided by § 495, Rem. Comp. Stat. [P. C., § 7476], in force during the time of the rendering of all of those decisions."

*Wax v. Northern Pac. R. Co.,* 32 Wash. 210, 73 Pac. 380, questioned—overruled—by *Deno v. Standard Furniture Co.,* 190 Wash. 1, 3, 66 P. (2d) 1158.

*State v. Durbin,* 32 Wash. 289, 73 Pac. 373, questioned, as follows, by *State v. Wickstrom,* 92 Wash. 503, 506, 159 Pac. 753.

"The case of *State v. Durbin,* 32 Wash. 289, 73 Pac. 373, is cited as sustaining the contention that the dismissal of the action in the justice court bars further prosecution, because it was there held that, where a defendant had been charged with a minor offense which was included within a greater, and the action dismissed, a subsequent prosecution for the greater

offense, upon the trial of which the defendant might be convicted of the minor with which he had been previously charged, could not be maintained. It must be admitted that the case supports this contention if the statute there being construed was the same as the present statute, and if that decision has not been subsequently modified. The statute upon which that case was based is general in its terms, while the present statute is specific and definite, and provides in express language when a dismissal will work a bar and when it will not. The difference in language in the two statutes is such that the holding in that case would not now be controlling."

*Davis v. Tacoma R. & P. Co.,* 35 Wash. 203, 77 Pac. 209, 66 L. R. A. 802, questioned—overruled—by *Deno v. Standard Furniture Co.,* 190 Wash. 1, 3, 66 P. (2d) 1158.

*State v. Ide,* 35 Wash. 576, 77 Pac. 961, 102 Am. St. 914, 67 L. R. A. 280, which held that an ordinance levying an annual street poll tax was invalid, overruled by *Tekoa v. Reilly,* 47 Wash. 202, 91 Pac. 769, 13 L. R. A. (N. S.) 901, and questioned by *State ex rel. McMannis v. Superior Court,* 92 Wash. 360, 362, 159 Pac. 383.

*In re Sullivan's Estate,* 36 Wash. 217, 78 Pac. 945, which held that an allowance for attorney's fees cannot be made to the attorney, but must be made to the administrator or executor, explained as follows in *In re Peterson's Estate,* 12 Wn. (2d) 686, 730, 123 P. (2d) 733:

"That case was decided, however, before the enactment of our present statutory provision, Rem. Rev. Stat., § 1528 [P. C. § 9790], which declares that:
" '. . . In all cases where it is necessary for such executor or administrator to employ an attorney, *such attorney shall be allowed* such compensation as to the court shall seem just and reasonable.' (Italics ours.)"

*Trumbull v. Jefferson County*, 37 Wash. 604, 79 Pac. 1105, questioned by *Stone-Easter v. Seattle*, 121 Wash. 520, 526, 209 Pac. 687, 215 Pac. 56.

*West Seattle v. West Seattle Land & Imp. Co.*, 38 Wash. 359, 80 Pac. 549, explained by *Gustaveson v. Dwyer*, 83 Wash. 303, 305, 145 Pac. 458, where we held that the immunity which protects taxes from the operation of the statute of limitations extends to property acquired by the county at a tax sale.

*Mullin v. Northern Pac. R. Co.*, 38 Wash. 550, 80 Pac. 814, which restricts the doctrine of nonliability of the master for negligent acts of fellow servants, questioned —overruled—by *Grim v. Olympia Light & Power Co.*, 42 Wash. 119, 124, 84 Pac. 635.

*Anderson v. Hilker*, 38 Wash. 632, 80 Pac. 848, questioned by *Davis v. Thurston County*, 119 Wash. 414, 418, 205 Pac. 840.

*Smith v. St. Paul, M. & M. R. Co.*, 39 Wash. 355, 81 Pac. 840, 109 Am. St. 889, 70 L. R. A. 1018, which was *sub silentio* overruled by *DeKay v. North Yakima & V. R. Co.*, 71 Wash. 648, 129 Pac. 574, questioned by *Taylor v. Chicago, M. & St. P. R. Co.*, 85 Wash. 592, 595, 148 Pac. 887, where we held that the jarring of buildings, the casting of smoke, sparks, and soot on premises, and the emission of gases and fumes, necessarily incident to the ordinary operation of a railroad through a city, which results in depreciating the value of neighboring property is *damnum absque injuria,* in the absence of negligence on the part of the railroad company. Cf. *Powell v. Superior Portland Cement, Inc.*, 15 Wn. (2d) 14, 129 P. (2d) 536, *Hardin v. Olympic Portland Cement Co.*, 89 Wash. 320, 154 Pac. 450, and *Bartel v. Ridgefield Lbr. Co.*, 131 Wash. 183, 229 Pac. 306.

*Jensen v. Cooks' & Waiters' Union*, 39 Wash. 531, 81 Pac. 1069, 4 L. R. A. (N. S.) 302; *St. Germain v. Bakery*

& *Confectionery Workers' Union,* 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F, 824; *Baasch v. Cooks Union,* 99 Wash. 378, 169 Pac. 843; and *Danz v. American Federation of Musicians,* 133 Wash. 186, 233 Pac. 630, in which we held "picketing," peaceful or otherwise, to be unlawful, are in conflict with *Adams v. Local No. 400 of Cooks, etc.,* 124 Wash. 564, 215 Pac. 19, and *Sterling Chain Theaters v. Central Labor Council,* 155 Wash. 217, 283 Pac. 1081, and were, in effect, overruled by *Kimbel v. Lumber & Sawmill Workers' Union,* 189 Wash. 416, 65 P. (2d) 1066. Cf. *Yakima v. Gorham,* 200 Wash. 564, 94 P. (2d) 180.

*State v. Strodemier,* 41 Wash. 159, 83 Pac. 22, 111 Am. St. 1012, questioned by *State v. Navone,* 180 Wash. 121, 131, 39 P. (2d) 384.

*Cunningham v. Krutz,* 41 Wash. 190, 83 Pac. 109, 7 L. R. A. (N. S.) 967, and *Bolton v. LaCamas Water Power Co.,* 10 Wash. 246, 38 Pac. 1043, in which we held that a homestead was the separate property of the surviving spouse to whom patent was issued, are in conflict with *Ahern v. Ahern,* 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912, and *Cox v. Tompkinson,* 39 Wash. 70, 80 Pac. 1005. See *Davies v. Metropolitan Life Ins. Co.,* 189 Wash. 138, 140, 63 P. (2d) 529.

*Postel v. Seattle,* 41 Wash. 432, 83 Pac. 1025, which was *sub silentio* overruled by *Kincaid .v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820, questioned by *Casassa v. Seattle,* 75 Wash. 367, 370, 134 Pac. 1080; *Wong Kee Jun v. Seattle,* 143 Wash. 479, 505, 255 Pac. 645; and *State v. Williams,* 12 Wn. (2d) 1, 12, 120 P. (2d) 496.

*State ex rel. Richey v. Smith,* 42 Wash. 237, 84 Pac. 851, 114 Am. St. 114, 7 Ann. Cas. 577, 5 L. R. A. (N. S.) 674, which was overruled by *Tacoma v. Fox,* 158 Wash. 325, 290 Pac. 1010, we held in *Lund v. Bruflat,* 159 Wash. 89, 90, 292 Pac. 112, was no longer authority.

*State ex rel. Dill v. Martin,* 45 Wash. 76, 87 Pac. 1054, in which costs were allowed against the state to the prevailing parties on appeal, questioned by *Washington Recorder Pub. Co. v. Ernst,* 1 Wn. (2d) 545, 551, 97 P. (2d) 116.

*Brandt v. Little,* 47 Wash. 194, 91 Pac. 765, 14 L. R. A. (N. S.) 213, questioned as follows by *John Hancock Mut. Life Ins. Co. v. Gooley,* 196 Wash. 357, 377, 83 P. (2d) 221:

"Respondent's main reliance is upon the case of *Brandt v. Little,* 47 Wash. 194, 91 Pac. 765, 14 L. R. A. (N. S.) 213, which was an action in equity to vacate a judgment, upon the ground that in the original action no process was served upon the plaintiff in the case cited, who was one of the defendants in the original suit. A demurrer was sustained to the complaint attacking the judgment in the prior cause, upon the ground that the complaint contained no allegation to the effect that any defense upon the merits to the original cause of action existed. On appeal from the judgment dismissing the action, this court affirmed the judgment of the trial court, stating the general rule to be that,

" 'In cases where an independent action is brought in equity to set aside the judgment complained of—especially where the defect of jurisdiction does not appear upon the face of the record—it is necessary to make a showing that the party has, or at the time of the entering of the judgment complained of did have, a good and sufficient defense, in whole or in part, to the action, and that a different result would or should have been obtained had the complainant had an opportunity to defend in said action.'

"It was held that the rule was applicable to the case then before the court.

"The *Brandt* case was considered by this court in the case of *Lushington v. Seattle Auto & Driving Club, supra.* It was there distinguished, this court saying:

" 'It is true that the *Brandt* case contains some expressions which might give color to appellant's con-

tention, but when we remember that that was an equity case, and that the rule for vacating or modifying judgments in equity still prevails, although possibly without reason under our present forms of practice, and that the original distinctions affecting procedure in vacating judgments at law and in equity have been preserved, it will be understood that that case cannot be held to be controlling in this one.' "

*Seattle v. Northern Pac. R. Co.*, 47 Wash. 552, 92 Pac. 411, questioned by *Seattle v. John C. Regan & Co.*, 52 Wash. 262, 268, 100 Pac. 731.

*Housekeeper v. Livingstone*, 48 Wash. 209, 93 Pac. 217, questioned as follows by *Stimson Mill Co. v. Feigenson Engr. Co.*, 100 Wash. 172, 180, 170 Pac. 573:

"*Housekeeper v. Livingstone*, 48 Wash. 209, 93 Pac. 217, is cited as authority to the effect that, where improvements are made upon leased ground with the knowledge of the owner of the fee, his interest will be subject to a lien unless he expressly notifies the lien claimant to the contrary. But the rule in that case was overcome—indeed, we may assume that the decision of the court prompted the legislature to pass an act putting the burden of written notice upon a materialman. The act provided that 'no materialman's lien shall be enforced unless the provisions of this act have been complied with.' Laws of 1909, p. 71, § 1; Laws of 1911, p. 376, § 1 (Rem. Code, § 1133)."

In *Skansi v. Novak*, 84 Wash. 39, 146 Pac. 160, we questioned *Johnson v. Conner*, 48 Wash. 431, 93 Pac. 914, and *Moore v. Brownfield*, 7 Wash. 23, 34 Pac. 199, which were overruled, in so far as they hold the contrary, by *McNaught-Collins Imp. Co. v. May*, 52 Wash. 632, 101 Pac. 237, and *State v. Sturtevant*, 76 Wash. 158, 135 Pac. 1035, 138 Pac. 650, and held that an entry on and possession of land, under the mistaken belief that it is public land, will not have the effect of disseizing the true owner; that such possession is sub-

servient to the public right, hence it is not hostile or adverse to the true owner.

*State v. Preston,* 49 Wash. 298, 95 Pac. 82, questioned by *State v. Smiley,* 167 Wash. 342, 345, 9 P. (2d) 370, in which we held that an instruction which used the phrase "gambling games" instead of "gambling resorts" was not erroneous.

*Cable v. Spokane & I. E. R. Co.,* 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224, reviewed as follows by *Haaga v. Saginaw Logging Co.,* 169 Wash. 547, 551, 14 P. (2d) 55:

"In the *Cable* case, the court recognized the rule that, ordinarily, the contributory negligence of the driver is not imputable to the passenger, unless the latter has, or is in a position to have, and exercise some control over the driver, but the court nevertheless held that the plaintiff, a girl seventeen years of age, was subject to the general rule of 'stop, look and listen,' and in the absence of any showing that she endeavored to stop the horse which her father was driving, or do something for her own protection, or that she was prevented from so doing, she would be subject to the rule. However, the strict application of the rule was later ameliorated by this court in *Wilson v. Puget Sound Electric Railway,* 52 Wash. 522, 101 Pac. 50, 132 Am. St. 1044, in the following language:

" 'It would certainly be an extreme case where the court would be warranted in announcing, as a rule of law, that a passenger in an automobile was required to warn, advise, or direct its driver, or to apply to such passenger the doctrine of "stop, look and listen." We are impressed with the statement of the learned counsel of the respondent, that ordinarily the only obligation on such passenger is to "sit tight." '

"It is but fair to say that in the *Sadler* case, *supra,* this court, referring to the *Wilson* case, repudiated the 'sit tight' doctrine except in emergency cases, although it did not overrule the decision itself."

*State v. Pilling,* 53 Wash. 464, 102 Pac. 230, 132 Am. St. 1080, questioned by *State v. Bradley,* 190 Wash. 538, 543, 69 P. (2d) 819.

*State v. Burns,* 54 Wash. 113, 102 Pac. 886; *State v. Preston,* 49 Wash. 298, 95 Pac. 82; and *State v. Gaasch,* 56 Wash. 381, 105 Pac. 817, questioned by *State v. Smiley,* 167 Wash. 342, 345, 9 P. (2d) 370.

*State ex rel. Arnold v. Mitchell,* 55 Wash. 513, 104 Pac. 791, and *Copland v. Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769, questioned by *In re Peterson's Estate,* 182 Wash. 29, 32, 45 P. (2d) 45, as no longer the law of this state, as was pointed out in *Holzman v. Spokane,* 91 Wash. 418, 157 Pac. 1086.

*State v. Gaasch,* 56 Wash. 381, 105 Pac. 817, questioned by *State v. Smiley,* 167 Wash. 342, 345, 9 P. (2d) 370.

*State ex rel. Chealander v. Carroll,* 57 Wash. 202, 106 Pac. 748, questioned by *State ex rel. Huff v. Reeves,* 5 Wn. (2d) 637, 642, 106 P. (2d) 729, as having been expressly overruled by *State ex rel. McAulay v. Reeves,* 196 Wash. 1, 81 P. (2d) 860.

*State v. Seattle,* 57 Wash. 602, 107 Pac. 827, 27 L. R. A. (N. S.) 1188, and *O'Brien v. Wilson,* 51 Wash. 52, 97 Pac. 1115, questioned by *Gustaveson v. Dwyer,* 83 Wash. 303, 305, 145 Pac. 458, in which, in the view of the dissenters, we extended the immunity which protects taxes from the operation of the statute of limitations to property acquired by the county at a tax sale.

*State v. McFarland,* 60 Wash. 98, 110 Pac. 792, questioned in concurring opinion in *Austin v. Seattle,* 176 Wash. 654, 662, 30 P. (2d) 646, as out of harmony with the general rule in holding penal provisions of hotel inspection fee statute invalid on the ground that the inspection fee constituted a "debt" within the mean-

ing of the constitutional provision prohibiting imprisonment for debt.

In *Ransom v. Joseph E. Wickstrom & Co.*, 84 Wash. 419, 422, 146 Pac. 1041, where we held that the objection that a corporation, appearing as an adverse claimant to property levied upon, had not paid its annual license fee, is waived if not raised in trial court by demurrer, answer or reply; and it is not raised by motion for a new trial in the absence of a showing that the objection was advanced at that time, we questioned, as follows, *North Star Trading Co. v. Alaska-Yukon-Pacific Exposition,* 63 Wash. 376, 115 Pac. 855, which held, in effect, that this question might be effectually raised for the first time on appeal:

"That decision was overruled on a rehearing by the court *En Banc,* the question being reported in 68 Wash. 457, 123 Pac. 605. We there held that an objection because of the failure to allege payment of the license fee, if not raised in the trial court by demurrer, answer or reply, would be considered waived. See, also, *Rothchild Brothers v. Mahoney,* 51 Wash. 633, 99 Pac. 1031; *Eastman & Co. v. Watson,* 72 Wash. 522, 130 Pac. 1144. In the last case we said:

" 'If the action is brought when the fee is in default, the action may be abated, upon proper showing, until the fee is paid. If no showing is made, the defendant waives the question.'

"The appellant urges that this was a statutory proceeding by affidavit to which no answer was required. The sufficiency of the affidavit was, however, in issue from the start. The appellant could and should have raised the question by a demurrer, either written or oral. It is also urged that the motion for a new trial was broad enough to include this objection. It is not pretended, however, that the objection now urged was ever advanced in the trial court even in argument. In the absence of such a showing, on the authority of the foregoing decisions, we must treat the objection as waived."

*Northwestern Mut. Life Ins. Co. v. Chehalis County Bank,* 65 Wash. 374, 118 Pac. 326, questioned by *Elsom v. Gadd,* 93 Wash. 603, 605, 161 Pac. 483, 162 Pac. 867.

In *Puget Mill Co. v. Kerry,* 183 Wash. 542, 559, 49 P. (2d) 57, we held, consistent with *Delano v. Tennent,* 138 Wash. 39, 244 Pac. 273, 45 A. L. R. 766, which overruled *sub silentio Harvard Inv. Co. v. Smith,* 66 Wash. 429, 119 Pac. 864, that the assignee of a lease, who had expressly assumed the burden thereof, is liable for the full term of the lease.

*Shea v. Skagit County,* 68 Wash. 233, 122 Pac. 1061, questioned by *Grant v. Evans,* 163 Wash. 484, 486, 1 P. (2d) 852, as no longer authoritative—"not in harmony with earlier and later cases decided by this court."

*Collignon & Co. v. Hammond Milling Co.,* 68 Wash. 626, 123 Pac. 1083, questioned, as follows, by *Northern G. W. Co. v. Northwest Trading Co.,* 117 Wash. 422, 425, 201 Pac. 903, 204 Pac. 202:

"It is appellant's argument that this case is governed by what this court said in the case of *Collignon & Co. v. Hammond Milling Co.,* 68 Wash. 626, 123 Pac. 1083; and it quotes that part of the opinion which follows:

" 'There is nothing in a c. i. f. sale differentiating it from other sales, so far as the question under consideration is concerned. The distinguishing feature of such a sale is that the contract price includes the costs of insurance and the freight to destination in addition to the invoice cost of the goods. An offer and acceptance on that basis, therefore, does not, more than in other sales, determine as between buyer and seller when or where the title to the goods passes from buyer to seller. That depends upon the intention of the parties to be determined as in other cases.'

"The expression of this court in that case is, if read literally, not supported by the authorities and has, in fact, been overruled by our decision in *Andersen, Meyer & Co. v. Northwest Trading Co.,* 115 Wash. 37,

196 Pac. 630, where we had under consideration a 'c. i. f.' contract. In the *Collignon* case, *supra*, a 'c. i. f.' contract was considered without any reference to the English and American authorities which have passed upon this form of contract under the law merchant, and which have established, with scarcely a dissenting opinion anywhere, that a 'c. i. f.' contract, although the term may be used in connection with the price of the commodities, yet affects the title on delivery. These contracts being so generally used have received a uniform interpretation, and it will not do to introduce confusion into commercial activities by establishing a rule which is inharmonious with the general custom of merchants throughout the trading world."

*Knickerbocker Co. v. Seattle,* 69 Wash. 336, 124 Pac. 920, where we held that an elevated roadway resting upon mud sills, piles and stringers was a permanent improvement, questioned by *Thorberg v. Hoquiam,* 77 Wash. 679, 682, 138 Pac. 304, as follows:

"It was there insisted that a structure of wood was but a temporary improvement, and was intended to serve as a roadway only until such time as an earth fill could be made. We are not inclined to adopt the reasoning of the *Knickerbocker* case to the extent of holding that a plank roadway laid upon an ungraded street in a city is a permanent improvement as a matter of law; but where a grade is formally established, as was done in the *Knickerbocker* case (and here by adoption or estoppel), we think there can be no doubt of the proposition that a city would not be warranted in improving the street under the statutes permitting the creation of an assessment district and charging the cost of the improvement to the abutting property without giving the work some character of finality or permanence. Or, to state the proposition in another way, if a city improves a street under the special assessment plan and charges the cost thereof to the abutting property, the law will presume the formal adoption of a grade as against a subsequent change of grade on the part of the city. If not within the letter, this ruling is

clearly within the spirit of Rem. & Bal. Code, § 7875 (P. C. 77 § 1167)."

*Jorgenson v. Winter,* 69 Wash. 573, 125 Pac. 957, questioned by *In re Pfeiffer,* 10 Wn. (2d) 703, 711, 118 P. (2d) 158, as statutory provision involved was thereafter repealed.

*State v. Bennett,* 71 Wash. 673, 129 Pac. 409, questioned by *State v. Navone,* 180 Wash. 121, 131, 39 P. (2d) 384, where we stated that during recent years the strict rule as to the necessity for the jury remaining absolutely together at all times has been somewhat relaxed.

*Corman v. Sanderson,* 72 Wash. 627, 131 Pac. 198, questioned by *Easterbrooks v. Abrahams,* 200 Wash. 636, 637, 94 P. (2d) 486, as being in conflict with *Enbody v. Hartford Accident & Indemnity Co.,* 147 Wash. 237, 265 Pac. 734, in the matter of attorney's fees as costs for successful defense of an action of forcible entry and detainer.

*Jorguson v. Seattle,* 80 Wash. 126, 141 Pac. 334, questioned by *Hamm v. Seattle,* 143 Wash. 700, 255 Pac. 655, and questioned by *State v. Williams,* 12 Wn. (2d) 1, 12, 120 P. (2d) 496.

*Creditors' Collection Ass'n v. Bisbee,* 80 Wash. 358, 141 Pac. 886, questioned as follows by *Pacific Coast Adjustment Co. v. Reese,* 189 Wash. 347, 348, 65 P. (2d) 1057:

"In *Creditors Collection Ass'n v. Bisbee,* 80 Wash. 358, 141 Pac. 886, it was held that property selected in lieu of the animals listed in subd. 4 of § 563 must be of a like nature. This holding was reversed in *Lemagie v. Acme Stamp Works,* 98 Wash. 34, 167 Pac. 60, which announced the existing rule that the householder may select money in lieu of the designated animals, or credits, or debts due, or any other kind of property whatsoever. Subsequently, it was held in *Dean v. Opdycke,* 151 Wash. 504, 276 Pac. 545, that the exemptions granted

164

by § 563 may be claimed in garnishment proceedings. It follows, therefore, that, but for the existence of the proviso in § 703, a head of a family, whose wages are garnisheed, could claim as exempt both the twenty dollars per week provided in the body of that section and two hundred and fifty dollars under subd. 4 of § 563.

"The proviso has been included in our garnishment exemption statutes at all times since 1907. It survived an attack made on constitutional grounds more than twenty years ago in *Creditors Collection Ass'n v. Bisbee, supra*. In concluding his opinion in *In re French*, 250 Fed. 644, Judge Cushman said:

" 'For, while *Creditors' Collection Association v. Bisbee*, 80 Wash. 358, 141 Pac. 886, has been overruled in the matter of lieu exemptions, it has not been overruled in the holding therein made that section 703 containing the foregoing proviso, was in all respects constitutional.' "

*State v. Morden*, 87 Wash. 465, 151 Pac. 832, questioned by *State v. Navone*, 180 Wash. 121, 131, 39 P. (2d) 384, where we stated that, during recent years, the strict rule as to the necessity for the jury remaining absolutely together at all times has been somewhat relaxed.

*Davies v. Maryland Cas. Co.*, 89 Wash. 571, 154 Pac. 1116, 155 Pac. 1035, questioned by *Johnson v. McGilchrist*, 174 Wash. 178, 183, 24 P. (2d) 607, because contrary to the overwhelming weight of authority and overruled by *Luger v. Windell*, 116 Wash. 375, 199 Pac. 760, 37 A. L. R. 641.

*O'Meara v. Russell*, 90 Wash. 557, 156 Pac. 550, L. R. A. 1916E 743, in conflict with *Corcoran v. Postal Telegraph-Cable Co.*, 80 Wash. 570, 142 Pac. 29, L. R. A. 1915B, 552, questioned by *Kneass v. Cremation Society of Washington*, 103 Wash. 521, 527, 175 Pac. 172.

*State v. Bates & Rogers Const. Co.*, 91 Wash. 181, 157 Pac. 482, questioned—overruled—by *Reynolds v. Addison Miller Co.*, 143 Wash. 271, 279, 255 Pac. 110.

*Stertz v. Industrial Ins. Commission,* 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B, 354, questioned by *Blankenship v. Department of Labor and Ind.,* 180 Wash. 108, 112, 39 P. (2d) 981.

*Shippen v. Shippen,* 91 Wash. 610, 158 Pac. 247, questioned by *Stone-Easter v. Seattle,* 121 Wash. 520, 524, 209 Pac. 687, 215 Pac. 56, where we held that the supreme court not having appellate jurisdiction where the original amount in controversy does not exceed two hundred dollars, sureties on a cost bond in the superior court for two hundred dollars not being entitled to appeal to the supreme court in case of judgment against them, are not necessary parties to an appeal by the adverse party from a judgment in favor of the principal on the cost bond.

*Peterson v. Chess,* 92 Wash. 682, 159 Pac. 894, questioned as follows by *Helf v. Hansen & Keller Truck Co.,* 167 Wash. 206, 209, 9 P. (2d) 110:

"We have not overlooked the case of *Peterson v. Chess,* 92 Wash. 682, 159 Pac. 894, where it was held that the vendee of a motorcycle under a conditional sales contract could not recover for damages to the machine where it appeared that he had no interest therein at the time the action was commenced or at the time of the trial, the vendors having taken possession after the accident. But the rule of that case was abrogated by the case of *Stotts v. Puget Sound Tr. L. & P. Co., supra,* holding that the rights of a vendee under a conditional sales contract are the same as those of a bailee of personal property, and the case of *Burnett v. Edw. J. Dunnigan, Inc., supra,* to the effect that the vendee of an automobile under a conditional sales contract may maintain an action for its conversion even though, subsequent to the conversion and the institution of the action, the automobile had been repossessed by the vendor."

*Standard Oil Co. v. Graves,* 94 Wash. 291, 162 Pac. 558, questioned by *Union Oil Co. v. State,* 125 Wash.

327, 328, 216 Pac. 22, as the oil inspection fee statute was held unconstitutional as imposing a direct burden upon interstate commerce. See *Standard Oil Co. v. Graves*, 249 U. S. 389, 63 L. Ed. 662.

*St. Germain v. Bakery & Confectionery Workers' Union*, 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F, 824, questioned by *Yakima v. Gorham*, 200 Wash. 564, 568, 94 P. (2d) 180.

*Jones v. Hoquiam Lbr. & Shingle Co.*, 98 Wash. 172, 167 Pac. 117, questioned by *Seattle Ass'n of Credit Men v. General Motors Acceptance Corp.*, 188 Wash. 635, 637, 63 P. (2d) 359.

*Northwest Trust & Safe Deposit Co. v. Butcher*, 98 Wash. 158, 167 Pac. 46, overruled by *Union Central Life Ins. Co. v. Fischer*, 169 Wash. 75, 77, 13 P. (2d) 889, and *State ex rel. O'Brien v. Superior Court*, 173 Wash. 679, 24 P. (2d) 117.

*State v. Postal Telegraph-Cable Co.*, 101 Wash. 630, 172 Pac. 902, questioned by *State ex rel. Washington Motor Coach Co. v. Kelly*, 192 Wash. 394, 409, 74 P. (2d) 16.

*Ebling v. Nielsen*, 109 Wash. 355, 186 Pac. 887, questioned by *Morehouse v. Everett*, 141 Wash. 399, 411, 252 Pac. 157, as having been modified by *Ebling v. Nielsen*, 113 Wash. 698, 193 Pac. 569.

*Schaefer v. E. F. Gregory Co.*, 112 Wash. 408, 192 Pac. 968, questioned as follows by *Hubbard v. Grandquist*, 191 Wash. 442, 448, 71 P. (2d) 410:

"An ordinary contract for the sale of real estate vests no title in the vendee. It cannot be held that the making of such a contract, whereby the owner of a tract of land agrees to sell a portion of it to another, severs the title. As this court said in the case of *Culmback v. Stevens*, 158 Wash. 675, 291 Pac. 705:

" 'Whatever this court may have said heretofore on the question of the effect of such contracts in *Schaefer v. Gregory Co.*, 112 Wash. 408, 192 Pac. 968; *Ashford*

*v. Reese,* 132 Wash. 649, 233 Pac. 29, or *In re Kuhn's Estate,* 132 Wash. 678, 233 Pac. 293, we now say that it creates a right enforceable against the land which is the subject of the contract; a right which cannot be taken away by either the grantor in the contract or by any one, with notice of the contract, claiming under, by or through the grantor, unless for a breach of the conditions of the contract by the grantee.

" 'It must follow that the interest in the property remaining in the grantors after the execution of the contract to the Richardsons was an incumbered title; that it was a legal title subject to be defeated absolutely by a performance of the contract on the part of the grantees, and subject to be reinstated in full on a breach of the contract. The real beneficial interest remaining in the grantors was the right to receive the payments as they fell due on the contract.' "

*State ex rel. Wettrick v. Seattle,* 115 Wash. 548, 197 Pac. 782, which is contrary to our prior opinions that the payment of the salary of the disputed office to the *de facto* officer was not a wrongful payment, and that such payment absolved the municipality from liability to the *de jure* officer, questioned—overruled—by *State ex rel. Weyant v. Seattle,* 127 Wash. 681, 688, 221 Pac. 997.

*State v. Catalino,* 118 Wash. 611, 204 Pac. 179 overruled by *State v. Misetrich,* 124 Wash. 470, 471, 215 Pac. 13, and questioned by *State v. Whipple,* 124 Wash. 578, 579, 215 Pac. 14.

*Dishman v. Whitney,* 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460, questioned by *Bourus v. Hagen,* 192 Wash. 588, 591, 74 P. (2d) 205, as no longer an authority in view of *Dishman v. Whitney,* 124 Wash. 697, 215 Pac. 71. See, also, *Mitchell v. Maytag-Pacific-Intermountain Co.,* 184 Wash. 342, 350, 51 P. (2d) 393, where we observed that, for the reasons stated in *Nettleship v. Shipman,* 161 Wash. 292, 296 Pac. 1056, the published opinion in *Dishman v. Whitney,* 121 Wash. 157, 209

Pac. 12, 29 A. L. R. 460, never became a decision of this court.

*In re Sherwood's Estate,* 122 Wash. 648, 211 Pac. 734, questioned by *In re Barclay's Estate,* 1 Wn. (2d) 82, 88, 95 P. (2d) 393.

*Castner v. Tacoma Gas & Fuel Co.,* 123 Wash. 236, 212 Pac. 283, which held that the cost of funeral expenses was not recoverable in an administrator's action for wrongful death for the benefit of certain relatives or dependents, questioned by *McMullen v. Warren Motor Co.,* 174 Wash. 454, 457, 25 P. (2d) 99, as it was overruled by *Castner v. Tacoma Gas & Fuel Co.,* 126 Wash. 657, 219 Pac. 12.

*Northern Pac. R. Co. v. Schoenfeldt,* 123 Wash. 579, 213 Pac. 26, questioned by *Williams v. Denney,* 151 Wash. 630, 635, 276 Pac. 858, as overruled by *Buck v. Kuykendall,* 267 U. S. 307, 69 L. Ed. 622.

*Inland Finance Co. v. Ingersoll Co.,* 124 Wash. 72, 213 Pac. 679, questioned—overruled—by *Bank of Commerce v. Kelpine Products Co.,* 167 Wash. 592, 597, 10 P. (2d) 238, where we said:

"In the case of *Inland Finance Co. v. Ingersoll Co.,* 124 Wash. 72, 213 Pac. 679, wherein deficiencies in the corporate acknowledgment were different from those in the later case of *Yukon Investment Co. v. Crescent Meat Co., supra,* and different from those in the present case, it was held that, notwithstanding inaccuracies in the acknowledgment, the instrument should be held good under the statutory policy of substantial compliance. However, upon further consideration, we conclude that anything said in that case inconsistent with the later case of *Yukon Investment Co. v. Crescent Meat Co., supra,* which we follow in the present case, may be considered overruled."

*Kinnear v. King County,* 124 Wash. 102, 213 Pac. 472, questioned—overruled—as follows by *Inland Empire Land Co. v. Grant County,* 138 Wash. 439, 442, 245 Pac. 14:

"Much reliance is placed upon our decision in *Kinnear v. King County,* 124 Wash. 102, 213 Pac. 472, in which we held that the trial court had properly dismissed an action in which there was no showing that the property was assessed disproportionately to other property of like character. But the doctrine of that case has not been followed in our later decisions. In *Tacoma Mill Co. v. Pierce County,* 130 Wash. 358, 227 Pac. 500, the decision in *Kinnear v. King County, supra,* was reviewed, and attention was called to the fact that, since that decision, we had decided the cases of *Northern Pacific R. Co. v. Pierce County,* 127 Wash. 369, 220 Pac. 826, and *Inland Empire R. Co. v. Whitman County,* 128 Wash. 358, 223 Pac. 6, wherein we held that excessive valuation may, in certain cases, be so great as to raise constructive fraud, and that it was not necessary that there also be a showing that the land was assessed disproportionately to other land of like character. Applying those decisions to the instant case, it seems plain that land assessed from two to four times its actual value presents a case of constructive fraud that requires the intervention of a court of equity to grant relief."

*Finkelberg v. Continental Cas. Co.,* 126 Wash. 543, 219 Pac. 12, questioned as follows by *Merriman v. Maryland Cas. Co.,* 147 Wash. 579, 584, 266 Pac. 682:

"Aside from what is said in *Finkelberg v. Continental Casualty Co.,* 126 Wash. 543, 219 Pac. 12, relative to the effect of the failure of the assured to give notice of the pendency of the action, and which was not necessary to the decision in that case, no case has been cited, and in our investigation we have discovered none, which holds that the failure of the assured to inform the company that an action has been begun, as required by the policy, enables the injured person to maintain an action on the policy after obtaining a judgment against the assured without giving to the insurance company the right to defend upon the merits as to the question of liability and the amount thereof. The appellant had the right, at some time at least, to an opportunity to defend upon the merits and this is something that as yet it has never had. The case of *Finkelberg v. Conti-*

*nental Casualty Co., supra,* so far as it is not in accord with what has herein been said will be modified."

*State v. Matson,* 127 Wash. 513, 221 Pac. 311, questioned—overruled—as follows by *State v. Rouw,* 156 Wash. 198, 203, 286 Pac. 81:

"After careful consideration of the questions now presented in connection with the first instruction above quoted, we hold, notwithstanding expressions to the contrary in the opinion of this court in the case of *State v. Matson, supra,* that the statutory presumption, as established by ch. 19, Laws of 1917, p. 61, § 12 (Rem. Comp. Stat., § 7329), *supra,* applies in prosecutions for the manufacture of intoxicating liquor for the purpose of sale, barter or exchange."

*Hatch v. Cole,* 128 Wash. 107, 222 Pac. 463, questioned—overruled—as follows by *Puget Sd. Bridge & Dredging Co. v. Lake Washington Shipyards,* 1 Wn. (2d) 401, 409, 96 P. (2d) 257:

"It may be that the *Hatch* case can be harmonized with our former decisions, above referred to, on the ground that, in the *Hatch* case, the court was not so much concerned with the question of a proper hearing, but rather with the question of the refusal of the arbitrators to properly weigh the evidence. The determination of the weight and sufficiency of the evidence is a matter within the judicial power of the arbitrators, and any error in that respect would be one of 'fact or law,' which must appear upon the face of the award. *School Dist. No. 5 v. Sage,* 13 Wash. 352, 43 Pac. 341; *Puget Sound Bridge & Dredging Co. v. Frye,* 142 Wash. 166, 252 Pac. 546.

"However, we do not now subscribe to the broad statement made in the *Hatch* case that arbitrators have the power to arbitrarily decide disputes. Like any other judicial tribunal, they must decide upon the evidence adduced, after an opportunity for a full and fair hearing has been accorded to all the parties. Nor do we think that it is at all material whether the misbehavior of the arbitrators be intentional or not if, in fact, the parties have not had a proper hearing. An oppor-

tunity to be heard is a condition precedent to the arbitrators' authority to make the award."

*Stevens v. Irwin,* 132 Wash. 289, 231 Pac. 783, questioned by *Russell v. Stephens,* 191 Wash. 314, 315, 71 P. (2d) 30.

*Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29, and *In re Kuhn's Estate,* 132 Wash. 678, 233 Pac. 293, questioned—overruled—by *Hubbard v. Grandquist,* 191 Wash. 442, 448, 71 P. (2d) 410.

*Holt Mfg. Co. v. Jaussaud,* 132 Wash. 667, 233 Pac. 35, 38 A. L. R. 1312, questioned by *Kuhn v. Ambrose,* 171 Wash. 528, 531, 18 P. (2d) 485, as follows:

"Appellant relies on the case of *Holt Mfg. Co. v. Jaussaud,* 132 Wash. 667, 233 Pac. 35, 38 A. L. R. 1312, in which we held that no title whatever passes under a conditional sales contract of personal property. We have, however, since receded somewhat from that position, and have later held that the vendee does have some interest in the chattel, and that such interest is subject to attachment. *Hess v. Starwich,* 149 Wash. 679, 272 Pac. 75. If the vendee's interest may be the subject of attachment, then it may also be subject to voluntary transfer, unless prohibited by the agreement of sale."

*Loveless v. Chehalis,* 133 Wash. 33, 233 Pac. 301, overruled by *State ex rel. Larson v. Vancouver,* 160 Wash. 655, 295 Pac. 947, questioned by *State ex rel. Johnson v. Dayton,* 200 Wash. 91, 94, 93 P. (2d) 909.

*Danz v. American Federation of Musicians,* 133 Wash. 186, 233 Pac. 630, questioned—overruled—by *Yakima v. Gorham,* 200 Wash. 564, 568, 94 P. (2d) 180.

*State v. Dalzell,* 135 Wash. 621, 238 Pac. 635, questioned as no longer authority by *State v. Knizek,* 192 Wash. 351, 354, 73 P. (2d) 731.

*Frandila v. Department of Labor & Industries,* 137 Wash. 530, 243 Pac. 5, and *Cole v. Department of Labor & Industries,* 137 Wash. 538, 243 Pac. 7, questioned by

*McCormick Lbr. Co. v. Department of Labor & Industries,* 7 Wn. (2d) 40, 49, 108 P. (2d) 807.

*Riverside Finance Co. v. Griffith,* 140 Wash. 322, 248 Pac. 786, overruled by *Walker v. Fowler,* 155 Wash. 631, 285 Pac. 649, and questioned by *In re Binge's Estate,* 5 Wn. (2d) 446, 475, 105 P. (2d) 689.

*State v. Brunn,* 144 Wash. 341, 258 Pac. 13, overruled by *State v. Brunn,* 145 Wash. 435, 260 Pac. 990, questioned by *State v. McMahon,* 145 Wash. 672, 675, 261 Pac. 639.

*Lockhart v. Lockhart,* 145 Wash. 210, 259 Pac. 385, questioned by *Bartow v. Bartow,* 12 Wn. (2d) 408, 413, 121 P. (2d) 962.

*State v. Smith,* 145 Wash. 250, 259 Pac. 711, questioned as follows by *State v. Gaffney,* 151 Wash. 599, 607, 276 Pac. 873, and questioned by *State v. Freitas,* 158 Wash. 155, 156, 290 Pac. 701:

"A careful examination of the authorities satisfies us that the decision of this court in the case of *State v. Smith, supra,* was incorrect. The true rule is that the character of a witness may be shown by general reputation, and not by cross-examination as to specific acts of insinuated immorality along the line attempted to have been followed by appellants in the case at bar. A different rule applies in connection with the cross-examination of a party to an action, and cases in which courts have considered such cross-examination are not directly in point on the question now before us."

*Enbody v. Hartford Accident & Indemnity Co.,* 147 Wash. 237, 265 Pac. 734, questioned by *Easterbrooks v. Abrahams,* 200 Wash. 636, 637, 94 P. (2d) 486, as in conflict with *Corman v. Sanderson,* 72 Wash. 627, 131 Pac. 198.

*In re Cross' Estate,* 147 Wash. 441, 266 Pac. 711; 147 Wash. 699, 266 Pac. 712; and 148 Wash. 422, 269 Pac. 339, overruled by *In re Cross' Estate,* 152 Wash. 459, 278 Pac. 414, which was overruled by *In re Verchot's*

*Estate,* 4 Wn. (2d) 574, 578, 580, 104 P. (2d) 490, as contrary to a practical unanimity of authority upon the propositions established by *Singleton v. Cheek,* 284 U. S. 493, 76 L. Ed. 419, 52 S. Ct. 257, 81 A. L. R. 923.

*State ex rel. Merritt v. Superior Court,* 147 Wash. 690, 267 Pac. 503—motion for change of venue—questioned and in part overruled by *State ex rel. Schmidt v. Nevins,* 180 Wash. 356, 358, 39 P. (2d) 990, because in conflict with *State ex rel. Shook v. Superior Court,* 141 Wash. 651, 252 Pac. 103.

Instruction given in *Skates v. Conniff,* 153 Wash. 538, 280 Pac. 15, questioned by *O'Neil v. Gruhn,* 197 Wash. 557, 563, 85 P. (2d) 1064, as contrary to other cases of this court, none of which is cited.

*Garrett v. Byerly,* 155 Wash. 351, 284 Pac. 343, 68 A. L. R. 254, overruled by *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, questioned by *Eggert v. Schumacher,* 173 Wash. 119, 22 P. (2d) 52.

*Cherry v. General Petroleum Corp.,* 172 Wash. 688, 21 P. (2d) 520, questioned by *Frazee v. Western Dairy Products,* 182 Wash. 578, 587, 47 P. (2d) 1037.

*Karp v. Herder,* 181 Wash. 583, 44 P. (2d) 808, questioned—overruled—by *Morris v. Chicago, M. St. P. & P. R. Co.,* 1 Wn. (2d) 587, 604, 97 P. (2d) 119, 100 P. (2d) 19.

*Ebey v. Engle & Hill,* 1 Wash. Terr. 72, overruled by *Bagley v. Carpenter,* 2 Wash. Terr. 19, 22.

*Shapoonmash v. United States,* 1 Wash. Terr. 188, overruled by *State v. Schafer,* 156 Wash. 240, 243, 286 Pac. 833, on question of sufficiency of showing in record of presence of the accused throughout the trial.

*Nickels v. Griffin,* 1 Wash. Terr. 374, overruled by *Phelps v. S. S. City of Panama,* 1 Wash. Terr. 615, where we held that, upon a proper showing made, new proofs could, on appeal in an admiralty cause, be introduced

in the territorial supreme court, which was not restricted to hearing the cause upon the proofs made in the district court.

*Tierney v. Tierney,* 1 Wash. Terr. 568, overruled *sub silentio* by *Irving v. Irving,* 26 Wash. 122, 66 Pac. 123, and expressly overruled by *Johnston v. Johnston,* 116 Wash. 322, 324, 199 Pac. 737, where we held that an order modifying the order made in a divorce proceeding awarding the custody of a minor child is appealable.

*Meeker v. Gardella,* 2 Wash. Terr. 355, overruled by *British Bark Latona v. McAllep,* 3 Wash. Terr. 332b, 342.

*Cline v. Mitchell,* 1 Wash. 24, 23 Pac. 1013; *Pierce v. Commercial Inv. Co.,* 31 Wash. 655, 72 Pac. 473; *Aetna Ins. Co. v. Thompson,* 34 Wash. 610, 76 Pac. 105; *Brockway v. Abbott,* 34 Wash. 700, 74 Pac. 1069; *Trumbull v. Jefferson County,* 37 Wash. 604, 79 Pac. 1105; and *Shippen v. Shippen,* 91 Wash. 610, 158 Pac. 247, overruled by *Stone-Easter v. Seattle,* 121 Wash. 520, 526, 209 Pac. 687, 215 Pac. 56.

*Northern Pac. & P. S. S. R. Co. v. Coleman,* 3 Wash. 228, 28 Pac. 514, overruled by *Enoch v. Spokane Falls & N. R. Co.,* 6 Wash. 393, 402, 33 Pac. 966, where we held that, under the provisions of Art. I, § 16 of the constitution, the measure of damages, where land is appropriated by a railroad for right of way purposes, is the fair market value of the land taken at the time of the appropriation, together with the amount of depreciation, if any, in the value of the land not taken, and these respective amounts should be ascertained without regard to any benefits that may have resulted from the construction, or proposed construction, of the railroad.

*Spithill v. Jones,* 3 Wash. 290, 28 Pac. 531, overruled by *Bates v. Drake,* 28 Wash. 447, 68 Pac. 961; *McKinley*

*v. Morgan,* 36 Wash. 561, 79 Pac. 45; and *Brown v. Baldwin,* 46 Wash. 106, 114, 89 Pac. 483. In the last cited case, we said:

"It shows how palpably wrong the announcement made in *Spithill v. Jones* was, and the inconsistency which this court was driven to in the case just cited in trying to sustain the doctrine of that case on the theory that it referred only to the form of the action, when the first expression of the law on the subject of the form of civil action provides that, 'There shall be in this state hereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be called a civil action.' Pierce's Code, § 250 (Bal. Code, § 4793). This is a mandatory provision of the law, and a ready yielding of allegiance to this mandate on the part of the courts of the state will simplify legal proceedings and strip them of fictions and technicalities which find no place in the reformed procedure. This holding does not lead to the conclusion that all the distinctions between law and equity are abolished, or that equitable actions are not to be tried under the same rules under which they always have been tried. It simply means that it makes no difference what the action is termed, and that the relief sought must be granted according to the demands of the complaint if they are substantiated by proof; that an applicant for justice is not to be turned out of the temple of justice scourged with costs because he happens to come in at one door instead of another, and be compelled to enter that other door to ask the same remedy at the hands of the same court. The court is the same, sitting at the same place, clothed with the same authority, and when once the applicant has gained legal access to the court through a statement of facts, which the law demands that the complaint shall be, he is entitled to just such relief as his complaint and his proof warrant; and in the trial of the cause, if it is discovered that the relief is equitable, the court will administer the equitable relief. If it becomes necessary in the trial of the cause to determine a purely legal right, the court, as it always has done, may call a jury to try out that question."

See, also, *Browder v. Phinney,* 30 Wash. 74, 70 Pac. 264, and *Filley v. Murphy,* 30 Wash. 1, 70 Pac. 107.

*Moore v. Brownfield,* 7 Wash. 23, 34 Pac. 199, overruled by *Skansi v. Novak,* 84 Wash. 39, 46, 146 Pac. 160; *State v. Sturtevant,* 76 Wash. 158, 135 Pac. 1035, 138 Pac. 650; and *McNaught-Collins Imp. Co. v. May,* 52 Wash. 632, 101 Pac. 237.

*Pacific Supply Co. v. Brand,* 7 Wash. 357, 35 Pac. 72, overruled by *Rayburn v. Abrams,* 52 Wash. 414, 100 Pac. 751.

In *Philbrick v. Andrews,* 8 Wash. 7, 35 Pac. 358, we held that where, in an action for divorce, the property of the husband has not been brought into the case, a decree in favor of the wife for alimony creates no specific lien on the property; and the husband's right to a homestead exemption is paramount to the lien created by an execution levy under such judgment. In *Haakenson v. Coldiron,* 190 Wash. 627, 70 P. (2d) 294, we held that the amount of alimony due the wife is not a debt or liability within the meaning of constitutional provisions or of the statute exempting the proceeds of accident and health insurance from "debts" and liabilities of a divorced husband.

See *Stafford v. Stafford,* 118 Wash. Dec. 721, 140 P. (2d) 545, where the question is raised whether under our constitution and statute exempting the homestead from execution or forced sale, except as in the statute provided, the homestead of the husband acquired after the entry of a decree of divorce and which was his separate property, is subject to sale under execution to satisfy the unpaid portion of alimony awarded in such decree. See, also, *Shibley v. Shibley,* 181 Wash. 166, 42 P. (2d) 446, where we held that a California judgment for alimony is not subject to modification as to sums already accrued and past due and may be established

in this state as a foreign judgment, to be enforced in equity by contempt proceedings, if necessary, the same as if the judgment or decree were originally entered in this state.

*Sears v. Williams,* 9 Wash. 428, 37 Pac. 665, 38 Pac. 135, 39 Pac. 280, overruled by *State ex rel. Bartelt v. Liebes,* 19 Wash. 589, 592, 54 Pac. 26.

*Neis v. Farquharson,* 9 Wash. 508, 37 Pac. 697, overruled by *Barto v. Stewart,* 21 Wash. 605, 618, 59 Pac. 480, where we held that action on any claim against a decedent's estate is barred if claim has not been presented to the personal representative of the estate within one year after published notice of appointment of such representative, although the claim at the time within which it should have been presented may not have been due, or may in fact have been wholly contingent.

*Glover v. Rochester-German Ins. Co.,* 11 Wash. 143, 39 Pac. 380, overruled by *Dickie Mfg. Co. v. Sound Construction & Engr. Co.,* 92 Wash. 316, 322, 159 Pac. 129.

*Webster v. Thorndyke,* 11 Wash. 390, 39 Pac. 677, overruled by *Roberts v. Washington Nat. Bank,* 11 Wash. 550, 554, 40 Pac. 225.

*Willamette Casket Co. v. Cross Undertaking Co.,* 12 Wash. 190, 40 Pac. 729, overruled by *Pacific Coast Biscuit Co. v. Perry,* 77 Wash. 352, 354, 137 Pac. 483, where we held that, although the statute provides that a chattel mortgage is void as against creditors unless recorded, an unrecorded chattel mortgage is valid as between the parties and creditors subsequent to its execution who acquired no specific lien upon the property up to the time when it was finally filed for record.

*Marquis v. Willard,* 12 Wash. 528, 41 Pac. 889, 50 Am. St. 906, in effect overruled by *Greenius v. American Surety Co.,* 92 Wash. 401, 159 Pac. 384, L. R. A. 1917F,

1134, and expressly overruled by *Jahns v. Clark,* 138 Wash. 288, 295, 244 Pac. 729.

*State v. Murphy,* 13 Wash. 229, 43 Pac. 44, which held that a conviction of murder in the second degree was an acquittal of murder in the first degree and the defendant could only be again tried for the lesser crime, was overruled by *State v. Ash,* 68 Wash. 194, 197, 122 Pac. 995, where we enunciated the rule that a conviction of a lesser offense is not an acquittal of greater offenses charged in the same information, operating as a bar upon the granting of a new trial.

*Powell v. Pugh,* 13 Wash. 577, 43 Pac. 879; *Gund v. Parke,* 15 Wash. 339, 46 Pac. 408; *Morse v. Estabrook,* 19 Wash. 92, 52 Pac. 531, 67 Am. St. 723, and *Andrews v. Andrews,* 3 Wash. Terr. 286, 14 Pac. 68, which held that the communuity personal property can be sold on execution to satisfy a judgment against husband for his separate debt, were overruled by *Schramm v. Steele,* 97 Wash. 309, 311, 318, 166 Pac. 634.

*Columbia Nat. Bank v. Western Iron & Steel Co.,* 14 Wash. 162, 44 Pac. 145, and *Cole v. Noerdlinger,* 22 Wash. 51, 60 Pac. 57, overruled by *Peters v. McPherson,* 62 Wash. 496, 502, 114 Pac. 188, when we held that a denial in manner and form that plaintiffs expended the specified sum of money alleged by them, in a certain action or at all, is a negative pregnant and insufficient.

*Pepperal v. City Park Transit Co.,* 15 Wash. 176, 45 Pac. 743, 46 Pac. 407, overruled by *Thornton v. Dow,* 60 Wash. 622, 629, 111 Pac. 899, where we held that the failure of a jury to follow, in making a special finding, an erroneous instruction of the court is not prejudicial error, where the record upon the whole case shows that the verdict was right, and no other verdict could have been rendered on proper instructions.

*Tacoma v. Krech,* 15 Wash. 296, 46 Pac. 255, 34 L. R. A. 68, overruled by *State v. Nichols,* 28 Wash. 628, 638, 69 Pac. 372.

*Jones v. St. Paul M. & M. R. Co.,* 16 Wash. 25, 47 Pac. 226, which held that the owner of a steamboat accustomed to navigate a river could not recover damages caused by an obstruction to navigation, compelling him to tie up his boat for several days, overruled by *Sholin v. Skamania Boom Company,* 56 Wash. 303, 308, 105 Pac. 632.

*Tacoma v. Tacoma Light & Water Co.,* 17 Wash. 458, 50 Pac. 55, overruled by *Parkhurst v. Elliott,* 103 Wash. 89, 92, 173 Pac. 731, where we held that the measure of damages for deceit in misrepresenting the value of mortgage securities, traded for plaintiff's property, is the difference between the actual value of the securities and their value as represented.

*German-American Sav. Bank v. Spokane,* 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259, and *Sheafe v. Seattle,* 18 Wash. 298, 51 Pac. 385, overruled by *Jurey v. Seattle,* 50 Wash. 272, 276, 97 Pac. 107.

*Brookman v. State Ins. Co.,* 18 Wash. 308, 51 Pac. 395, overruled by *Main v. Scholl,* 20 Wash. 201, 206, 54 Pac. 1125, where we held that property purchased with the proceeds of a loan made by either husband or wife subsequent to marriage is community property.

*Griffith v. Burlingame,* 18 Wash. 429, 51 Pac. 1059, overruled by *Security Savings & Loan Soc. v. Dudley,* 175 Wash. 50, 57, 26 P. (2d) 384, 28 P. (2d) 276.

*State ex rel. Denny v. Bridges,* 19 Wash. 44, 52 Pac. 326, 40 L. R. A. 593, overruled by *State ex rel. Bloedel-Donovan Lumber Mills v. Savidge,* 144 Wash. 302, 310, 258 Pac. 1.

*State v. McCormick,* 20 Wash. 94, 54 Pac. 764, over-

ruled by *State v. Pepoon,* 62 Wash. 635, 643, 114 Pac. 449.

*Pacific Nat. Bank v. Pierce County,* 20 Wash. 675, 56 Pac. 936, and *Ridpath v. Spokane County,* 23 Wash. 436, 63 Pac. 261, in so far as they held that a tax upon the shares of the capital stock of a banking corporation was an excise tax, were overruled by *Spokane & Eastern Trust Co. v. Spokane County,* 70 Wash. 48, 51, 126 Pac. 54,

*Hall v. Skavdale,* 21 Wash. 203, 57 Pac. 807, and *Pacific Supply Co. v. Brand,* 7 Wash. 357, 35 Pac. 72, overruled by *Rayburn v. Abrams,* 52 Wash. 414, 100 Pac. 751, where we held that a judgment of dismissal, for default in amending a complaint after sustaining a demurrer thereto, is appealable; since no exception was necessary to the order sustaining the demurrer and no further steps are necessary to secure a review, excepting an appeal.

*Shuey v. Holmes,* 21 Wash. 223, 57 Pac. 818, and *Fremont State Bank v. Vincent,* 112 Wash. 493, 192 Pac. 975, overruled by *Duke v. Johnson,* 123 Wash. 43, 46, 48, 211 Pac. 710.

*Chehalis County v. Ellingson,* 21 Wash. 638, 59 Pac. 485, overruled by *Spokane & Idaho Lbr. Co. v. Stanley,* 25 Wash. 653, 657, 66 Pac. 92.

*Ridpath v. Spokane County,* 23 Wash. 436, 63 Pac. 261, and *Pacific Nat. Bank v. Pierce County,* 20 Wash. 675, 56 Pac. 936, overruled by *Spokane & Eastern Trust Co. v. Spokane County,* 70 Wash. 48, 51, 126 Pac. 54.

*Peterson v. Seattle Traction Co.,* 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586. See *Armstrong v. Musser Lbr. & Mfg. Co.,* 43 Wash. 584, 586, 86 Pac. 944; *Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 563, 135 Pac. 209, and *New York Life Ins. Co. v. Newport,* 1 Wn. (2d) 511, 516, 96 P. (2d) 449.

*Bancroft-Whitney Co. v. Gowan,* 24 Wash. 66, 63 Pac. 1111, overruled by *Spokane Security Finance Co. v. Crowley Lbr. Co.,* 152 Wash. 697, 279 Pac. 103, where we held that a chattel mortgage giving the mortgagee a present right of possession does not entitle him to maintain an action of replevin; but a mortgagee of chattels may maintain an action for the conversion of the mortgaged property.

*Copland v. Pirie,* 26 Wash. 481, 67 Pac. 227, 90 Am. St. 769, and *State ex rel. Arnold v. Mitchell,* 55 Wash. 513, 104 Pac. 791, overruled by *Holzman v. Spokane,* 91 Wash. 418, 425, 157 Pac. 1086. See *In re Peterson's Estate,* 182 Wash. 29, 33, 45 P. (2d) 45.

*State v. Bliss,* 27 Wash. 463, 68 Pac. 87, *sub silentio* overruled by *State v. Butts,* 42 Wash. 455, 85 Pac. 33, and *State v. McCormick,* 56 Wash. 469, 105 Pac. 1037, and expressly overruled by *State v. Laws,* 61 Wash. 533, 534, 112 Pac. 488.

*Gray v. Washington Water Power Co.,* 27 Wash. 713, 68 Pac. 360, 30 Wash. 154, 70 Pac. 255, overruled by *Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 563, 135 Pac. 209. See *Young v. Dille,* 127 Wash. 398, 405, 220 Pac. 782 and *New York Life Ins. Co. v. Newport,* 1 Wn. (2d) 511, 516, 96 P. (2d) 449.

*State ex rel. Dudley v. Daggett,* 28 Wash. 1, 68 Pac. 340, overruled by *State ex rel. Plaisie v. Cole,* 40 Wash. 474, 82 Pac. 749, where we held that this court has no jurisdiction of an appeal from a judgment of the superior court in a proceeding for a mandamus to compel a justice of the peace to grant a change of venue, where the original amount in controversy is less than two hundred dollars.

*In re Macdonald's Estate,* 29 Wash. 422, 69 Pac. 1111, overruled by *Davis v. Shepard,* 135 Wash. 124, 130, 237 Pac. 21. See *Horton v. McCord,* 158 Wash. 563, 566, 291 Pac. 717.

*Burgert v. Caroline,* 31 Wash. 62, 71 Pac. 724, 96 Am. St. 889, overruled *sub silentio* by *Vietzen v. Otis,* 63 Wash. 411, 115 Pac. 858 (see 46 Wash. 402, 90 Pac. 264), and expressly overruled by *Olson v. Chapman,* 4 Wn. (2d) 522, 535, 104 P. (2d) 344.

*Pierce v. Commercial Inv. Co.,* 31 Wash. 655, 72 Pac. 473, overruled by *Stone-Easter v. Seattle,* 121 Wash. 520, 526, 209 Pac. 687, 215 Pac. 56.

*In re Waugh,* 32 Wash. 50, 72 Pac. 710, overruled by *In re Bruen,* 102 Wash. 472, 479, 172 Pac. 1152.

*State v. Durbin,* 32 Wash. 289, 73 Pac. 373, overruled *sub silentio* by *State v. Campbell,* 40 Wash. 480, 82 Pac. 752, and expressly by *State v. Wickstrom,* 92 Wash. 503, 506, 159 Pac. 753.

*Griggs v. MacLean,* 33 Wash. 244, 74 Pac. 360. See *Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 563, 135 Pac. 209, and *New York Life Ins. Co. v. Newport,* 1 Wn. (2d) 511, 516, 96 P. (2d) 449.

*Lawrence v. Pederson,* 34 Wash. 1, 74 Pac. 1011, overruled by *Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 563, 135 Pac. 209.

*O'Connor v. Lighthizer,* 34 Wash. 152, 75 Pac. 643; *Aetna Ins. Co. v. Thompson,* 34 Wash. 610, 76 Pac. 105; and *Brockway v. Abbott,* 34 Wash. 700, 74 Pac. 1069, overruled by *Stone-Easter v. Seattle,* 121 Wash. 520, 526, 209 Pac. 687, 215 Pac. 56.

*Swope v. Seattle,* 35 Wash. 69, 76 Pac. 517, overruled by *State ex rel. Young v. Superior Court,* 43 Wash. 34, 38, 85 Pac. 989.

*Allen v. Northern Pac. R. Co.,* 35 Wash. 221, 77 Pac. 204, 66 L. R. A. 804, overruled by *Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 563, 135 Pac. 209. See *Wait v. Robertson Mtg. Co.,* 37 Wash. 282, 79 Pac. 926.

*State v. Ide,* 35 Wash. 576, 77 Pac. 961, overruled by *Tekoa v. Reilly,* 47 Wash. 202, 209, 91 Pac. 769.

*Trumbull v. Jefferson County,* 37 Wash. 604, 79 Pac. 1105, overruled by *Stone-Easter v. Seattle,* 121 Wash. 520, 526, 209 Pac. 687, 215 Pac. 56.

*Okanogan County v. Cheetham,* 37 Wash. 682, 80 Pac. 262, 70 L. R. A. 1027, overruled by *McAllister v. Okanogan County,* 51 Wash. 647, 651, 100 Pac. 146.

*Tham v. Steeb Shipping Co.,* 39 Wash. 271, 81 Pac. 711. See *Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 563, 135 Pac. 209.

*Smith v. St. Paul, M. & M. R. Co.,* 39 Wash. 355, 81 Pac. 840. See *DeKay v. North Yakima & V. R. Co.,* 71 Wash. 648, 129 Pac. 574.

*Jensen v. Cooks' & Waiters' Union,* 39 Wash. 531, 81 Pac. 1069, 4 L. R. A. (N. S.) 302; *St. Germain v. Bakery & Confectionery Workers' Union,* 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F, 824; *Baasch v. Cooks Union,* 99 Wash. 378, 169 Pac. 843; and *Danz v. American Federation of Musicians,* 133 Wash. 186, 233 Pac. 630, overruled by *Yakima v. Gorham,* 200 Wash. 564, 568, 94 P. (2d) 180.

*State v. Bringgold,* 40 Wash. 12, 82 Pac. 132, overruled by *State v. Hamshaw,* 61 Wash. 390, 392, 112 Pac. 379, where we held that, upon appeal from justice court in a criminal case, the superior court cannot allow an amended complaint to be filed, over objection by the accused.

*Postel v. Seattle,* 41 Wash. 432, 83 Pac. 1025. See *Kincaid v. Seattle,* 74 Wash. 617, 620, 134 Pac. 504, 135 Pac. 820; and *International Contract Co. v. Seattle,* 74 Wash. 662, 134 Pac. 502.

*State ex rel. Richey v. Smith,* 42 Wash. 237, 84 Pac. 851, 114 Am. St. 114, 7 Ann. Cas. 577, 5 L. R. A. (N. S.) 674, *sub silentio* overruled by *State v. Pitney,* 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A, 209, and *State v. Walter Bowen & Co.,* 86 Wash. 23, 149 Pac. 330, Ann.

Cas. 1917B, 625; and expressly overruled by *Tacoma v. Fox*, 158 Wash. 325, 334, 290 Pac. 1010.

*Armstrong v. Wm. Musser Lbr. & Mfg. Co.*, 43 Wash. 584, 86 Pac. 944, overruled by *Rochester v. Seattle, R. & S. R. Co.*, 75 Wash. 559, 563, 135 Pac. 209.

*Hartley v. Ferguson*, 46 Wash. 33, 89 Pac. 156. See *Rochester v. Seattle, R. & S. R. Co.*, 75 Wash. 559, 563, 135 Pac. 209.

*Leonard v. Bassindale*, 46 Wash. 301, 89 Pac. 879, in which we held unconstitutional the law of 1905 prohibiting the use of trading stamps, overruled by *State v. Pitney*, 79 Wash. 608, 615, 140 Pac. 918.

*Johnson v. Conner*, 48 Wash. 431, 93 Pac. 914, overruled by *McNaught-Collins Imp. Co. v. May*, 52 Wash. 632, 635, 101 Pac. 237. See, also, *State v. Sturtevant*, 76 Wash. 158, 174, 135 Pac. 1035, where we said:

"The court relied upon the case of *Moore v. Brownfield*, 7 Wash. 23, 34 Pac. 199, . . . upon the defense of adverse possession. In that case, it is said: 'Although possession be held in subordination to the title of the United States, it may be adverse to one claiming the land as against the possessor.' Judge Sawyer so instructed the jury in the case of *Francoeur v. Newhouse*, 43 Fed. 236, which was cited as sustaining authority. So far as we know, a like statement is not to be found elsewhere in the books. *Moore v. Brownfield* was followed in *Johnson v. Conner*, 48 Wash. 431, 93 Pac. 914, although at the time the court had declared a contrary rule in *Yesler Estate v. Holmes*, 39 Wash. 34, 80 Pac. 851."

See *Skansi v. Novak*, 84 Wash. 39, 45, 46, 146 Pac. 160.

*Holcomb v. Holcomb*, 49 Wash. 498, 95 Pac. 1091, and *Sullivan v. Sullivan*, 49 Wash. 508, 95 Pac. 1095, overruled by *Griffith v. Griffith*, 71 Wash. 56, 59, 127 Pac. 585, where we held that, under the constitution, limiting the original jurisdiction of the supreme court

to special writs and to all other writs necessary and proper to the complete exercise of its appellate jurisdiction, the supreme court has no jurisdiction, pending an appeal in a divorce case, to award the wife temporary alimony, suit money and attorney's fees for the prosecution of her appeal. We said:

"After the opinion of November 12, 1912, in this cause directing that the appellant be awarded alimony, suit money, and attorney's fees, had been filed, a petition for rehearing was presented by the respondent in which the jurisdiction of the court to make the order was suggested. On consultation upon the petition, it was found that differences of opinion existed among the several members of the court as to the court's jurisdiction, and the cause was set down for further argument at the present session. The question was reargued at the time appointed, and the court is now convinced that it was in error in making the order directed in its former opinion, and in error in making the orders in the cases of *Holcomb v. Holcomb,* 49 Wash. 498, 95 Pac. 1091; *Sullivan v. Sullivan,* 49 Wash. 508, 95 Pac. 1095; *Gallagher v. Gallagher,* 65 Wash. 310, 118 Pac. 4; and in entertaining the petition in *Gust v. Gust,* 69 Wash. 220, 124 Pac. 504. The reasons which lead us to this conclusion are clearly and fully stated in the dissenting opinion written by the present chief justice in the case of *Holcomb v. Holcomb, supra,* and we adopt the opinion as the opinion of the court in the present case. The order heretofore entered herein, directing alimony, suit money, and attorney's fees to be granted is therefore revoked, and the application for the same denied."

See *Lewis v. Lewis,* 83 Wash. 671, 145 Pac. 980; *State ex rel. Clark v. Superior Court,* 90 Wash. 80, 155 Pac. 398; *Reno v. Reno,* 118 Wash. 49, 203 Pac. 2; *State ex rel. Brown v. Superior Court,* 190 Wash. 572, 69 P. (2d) 811; *Haakenson v. Coldiron,* 190 Wash. 627, 70 P. (2d) 294; and *State ex rel. Davis v. Superior Court,* 200 Wash. 670, 94 P. (2d) 478.

*State ex rel. Puyallup v. Superior Court*, 50 Wash. 650, 97 Pac. 778, overruled by *State ex rel. Meyer v. Clifford*, 78 Wash. 555, 560, 139 Pac. 650.

*Gabrielson v. Hague Box & Lbr. Co.*, 55 Wash. 342, 104 Pac. 635, 133 Am. St. 1032, overruled *sub silentio* by *Holm v. Chicago, M. & P. S. R. Co.*, 59 Wash. 293, 109 Pac. 799, resuscitated, without reference to the *Holm* case, by *Coleman v. St. Paul & Tacoma Lbr. Co.*, 110 Wash. 259, 188 Pac. 532, and expressly overruled by *Staples v. Esary*, 130 Wash. 521, 524, 228 Pac. 514.

*State ex rel. Arnold v. Mitchell*, 55 Wash. 513, 104 Pac. 791, overruled by *Holzman v. Spokane*, 91 Wash. 418, 425, 157 Pac. 1086. See, also, *In re Peterson's Estate*, 182 Wash. 29, 33, 45 P. (2d) 45.

*State ex rel. Chealander v. Carroll*, 57 Wash. 202, 106 Pac. 748, overruled by *State ex rel. McAulay v. Reeves*, 196 Wash. 1, 10, 81 P. (2d) 860.

*Tsmura v. Great Northern R. Co.*, 58 Wash. 316, 108 Pac. 774, overruled by *Horton v. Oregon-Washington R. & N. Co.*, 72 Wash. 503, 512, 130 Pac. 897.

*Knust v. Bullock*, 59 Wash. 141, 109 Pac. 329; *Kneff v. Sanford*, 63 Wash. 503, 115 Pac. 1040; and *Burger v. Taxicab Motor Co.*, 66 Wash. 676, 120 Pac. 519, overruled by *Bradley v. S. L. Savidge, Inc.*, 13 Wn. (2d) 28, 123 P. (2d) 780.

*North Star Trading Co. v. Alaska-Yukon-Pacific Exposition*, 63 Wash. 376, 115 Pac. 855, overruled by opinion in same case, 68 Wash. 457, 123 Pac. 605.

*Gallagher v. Gallagher*, 65 Wash. 310, 118 Pac. 4, overruled by *Griffith v. Griffith*, 71 Wash. 56, 59, 127 Pac. 585.

*Harvard Inv. Co. v. Smith*, 66 Wash. 429, 119 Pac. 864, *sub silentio* overruled by *DeLano v. Tennent*, 138 Wash. 39, 244 Pac. 273, 45 A. L. R. 766, and expressly overruled by *Puget Mill Co. v. Kerry*, 183 Wash. 542, 559, 49 P. (2d) 57.

*Franklin County v. Carstens,* 68 Wash. 176, 122 Pac. 999, overruled by *Gustaveson v. Dwyer,* 83 Wash. 303, 145 Pac. 458.

*Shea v. Skagit County,* 68 Wash. 233, 122 Pac. 1061, overruled by *Grant v. Evans,* 163 Wash. 484, 486, 1 P. (2d) 852.

*Collignon & Co. v. Hammond Milling Co.,* 68 Wash. 626, 123 Pac. 1083, overruled *sub silentio* by *Andersen, Meyer & Co. v. Northwest Trading Co.,* 115 Wash. 37, 196 Pac. 630, and expressly overruled by *Northern G. W. Co. v. Northwest Trading Co.,* 117 Wash. 422, 426, 201 Pac. 903, 204 Pac. 202.

*Gust v. Gust,* 69 Wash. 220, 124 Pac. 504, overruled by *Griffith v. Griffith,* 71 Wash. 56, 59, 127 Pac. 585.

*State v. Wilson,* 69 Wash. 235, 124 Pac. 1125. See *State v. Schrader,* 135 Wash. 650, 662, 238 Pac. 617, 243 Pac. 10.

*Purdy v. Sherman,* 74 Wash. 309, 133 Pac. 440, and *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59, overruled by *Bradley v. S. L. Savidge, Inc.,* 13 Wn. (2d) 28, 48, 53, 66, 123 P. (2d) 780.

*Casassa v. Seattle,* 75 Wash. 367, 134 Pac. 1080. See *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645.

*Seattle v. McElwain,* 75 Wash. 375, 134 Pac. 1089, overruled by *In re Seattle,* 115 Wash. 535, 537, 197 Pac. 784.

*Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 135 Pac. 209. See *New York Life Ins. Co. v. Newport,* 1 Wn. (2d) 511, 516, 96 P. (2d) 449; and *Young v. Dille,* 127 Wash. 398, 220 Pac. 782.

*State ex rel. Murphy v. Wright,* 76 Wash. 383, 136 Pac. 482, overruled by *State ex rel. Meyer v. Clifford,* 78 Wash. 555, 560, 139 Pac. 650.

*Opsahl v. Northern Pac. R. Co.,* 78 Wash. 197, 138 Pac. 681, overruled by *Lauer v. Northern Pac. R. Co.,* 83 Wash. 465, 468, 145 Pac. 606.

*State v. George,* 79 Wash. 262, 140 Pac. 337, overruled by *State v. Wray,* 142 Wash. 530, 533, 253 Pac. 801.

*Jorguson v. Seattle,* 80 Wash. 126, 141 Pac. 334, overruled by *Wong Kee Jun v. Seattle,* 143 Wash. 479, 505, 255 Pac. 645.

*Creditors' Collection Ass'n v. Bisbee,* 80 Wash. 358, 141 Pac. 886. See *Lemagie v. Acme Stamp Works,* 98 Wash. 34, 167 Pac. 60, and *Pacific Coast Adjustment Co. v. Reese,* 189 Wash. 347, 348, 65 P. (2d) 1057.

*State ex rel. Conner v. Superior Court,* 81 Wash. 480, 143 Pac. 112, overruled by *Malim v. Benthien,* 114 Wash. 533, 540, 196 Pac. 7.

*Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 457, 144 Pac. 698, overruled by *Sturtevant Co. v. Fidelity & Deposit Company,* 92 Wash. 52, 67, 158 Pac. 740.

*Edmonds v. Altman,* 89 Wash. 4, 153 Pac. 1082, overruled by *Clemson v. Best,* 174 Wash. 601; 606, 25 P. (2d) 1032.

*Davies v. Maryland Cas. Co.,* 89 Wash. 571, 154 Pac. 1116, 155 Pac. 1035, L. R. A. 1916D, 395. See *Luger v. Windell,* 116 Wash. 375, 199 Pac. 760.

*Guerin v. Clark County,* 90 Wash. 242, 155 Pac. 1035, overruled by *Sweet Clinic v. Lewis County,* 154 Wash. 416, 425, 282 Pac. 832.

*Pappas v. Dailey,* 90 Wash. 285, 155 Pac. 1059. See *New York Life Ins. Co. v. Newport,* 1 Wn. (2d) 511, 516, 96 P. (2d) 449, and *Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 563, 135 Pac. 209.

*American Sav. Bank & Trust Co. v. Dennis,* 90 Wash. 547, 156 Pac. 559, overruled by *Old Nat. Bank v. Gibson,* 105 Wash. 578, 585, 179 Pac. 117.

*Seattle v. Dexter Horton Trust & Sav. Bank,* 90 Wash 661, 156 Pac. 844, overruled by *In re Seattle,* 115 Wash. 535, 543, 197 Pac. 784.

*State v. Bates & Rogers Const. Co.,* 91 Wash. 181, 157 Pac. 482, overruled by *Reynolds v. Addison Miller Co.,* 143 Wash. 271, 279, 255 Pac. 110.

*Shippen v. Shippen,* 91 Wash. 610, 158 Pac. 247, overruled by *Stone-Easter v. Seattle,* 121 Wash. 520, 526, 209 Pac. 687, 215 Pac. 56.

*Peterson v. Chess,* 92 Wash. 682, 159 Pac. 894, overruled by *Stotts v. Puget Sound T. L. & P. Co.,* 94 Wash. 339, 162 Pac. 519, L. R. A. 1917D, 214 and *Helf v. Hansen & Keller Truck Co.,* 167 Wash. 206, 209, 9 P. (2d) 110. See *Burnett v. Edw. J. Dunnigan, Inc.,* 165 Wash. 164, 4 P. (2d) 829.

*Standard Oil Co. v. Graves,* 94 Wash. 291, 162 Pac. 558, overruled by *Standard Oil Co. v. Graves,* 249 U. S. 389, 63 L. Ed. 662, on the ground that oil inspection fees imposed by Laws of 1907, ch. 192, imposed a direct burden upon interstate commerce, noticed in *Union Oil Co. v. State,* 125 Wash. 327, 328, 216 Pac. 22.

*St. Germain v. Bakery & Confectionery Workers' Union,* 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F, 824, overruled by *Yakima v. Gorham,* 200 Wash. 564, 568, 94 P. (2d) 180.

*Baasch v. Cooks Union,* 99 Wash. 378, 169 Pac. 843, overruled by *Yakima v. Gorham,* 200 Wash. 564, 568, 94 P. (2d) 180.

*Zuhn v. Horst,* 100 Wash. 359, 170 Pac. 1033, overruled by *Strong v. Sunset Copper Co.,* 9 Wn. (2d) 214, 225, 114 P. (2d) 526.

*Babbitt v. Seattle School Dist.,* 100 Wash. 392, 170 Pac. 1020, overruled by *Steiner v. Royal Blue Cab Co.,* 172 Wash. 396, 398, 20 P. (2d) 39, which was overruled by *Bradley v. S. L. Savidge, Inc.,* 13 Wn. (2d) 28, 123 P. (2d) 780.

*Moore v. Roddie,* 103 Wash. 386, 174 Pac. 648, overruled by *Bradley v. S. L. Savidge, Inc.,* 13 Wn. (2d) 28, 48, 53, 123 P. (2d) 780.

*Watson v. Barnard,* 105 Wash. 536, 178 Pac. 477, overruled by *Rockwell v. Thompson,* 124 Wash. 176, 179, 213 Pac. 922.

*United States Fidelity & Guaranty Co. v. Cascade Const. Co.,* 106 Wash. 478, 180 Pac. 463, *sub silentio* overruled by *Mercy v. A. I. Hall & Son,* 177 Wash. 338, 31 P. (2d) 1009, and expressly overruled by *Millett v. Mackie Mill Co.,* 193 Wash. 477, 483, 76 P. (2d) 311.

*Coleman v. St. Paul & Tacoma Lbr. Co.,* 110 Wash. 259, 188 Pac. 532, overruled by *Staples v. Esary,* 130 Wash. 521, 523, 524, 228 Pac. 514.

*Schaefer v. E. F. Gregory Co.,* 112 Wash. 408, 192 Pac. 968, overruled by *Culmback v. Stevens,* 158 Wash. 675, 291 Pac. 705, and *Hubbard v. Grandquist,* 191 Wash. 442, 448, 71 P. (2d) 410.

*Fremont State Bank v. Vincent,* 112 Wash. 493, 192 Pac. 975, overruled by *Duke v. Johnson,* 123 Wash. 43, 48, 211 Pac. 710.

*State ex rel. Wettrick v. Seattle,* 115 Wash. 548, 197 Pac. 782, overruled by *State ex rel. Weyant v. Seattle,* 127 Wash. 681, 689, 221 Pac. 997.

*Matapan Nat. Bank v. Seattle,* 115 Wash. 596, 197 Pac. 789, overruled by *Bale v. Floyd,* 199 Wash. 503, 509, 91 P. (2d) 1025.

*State v. Catalino,* 118 Wash. 611, 204 Pac. 179, overruled by *State v. Misetrich,* 124 Wash. 470, 215 Pac. 13.

*Mitchell v. Churches,* 119 Wash. 547, 206 Pac. 6, 36 A. L. R. 1132, overruled by *Bradley v. S. L. Savidge, Inc.,* 13 Wn. (2d) 28, 48, 53, 123 P. (2d) 780.

*Dishman v. Whitney,* 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460, and 124 Wash. 697, 215 Pac. 71, we stated, in *Bourus v. Hagen,* 192 Wash. 588, 591, 74 P. (2d) 205, was no longer recognized as an authority.

*Stone-Easter v. Seattle,* 121 Wash. 520, 209 Pac. 687, overruled on rehearing 121 Wash. 522, 215 Pac. 56.

*Castner v. Tacoma Gas & Fuel Co.,* 123 Wash. 236, 212 Pac. 283, overruled on rehearing, 126 Wash. 657, 219 Pac. 12, where we held that funeral expenses are recoverable against one causing the death of another by wrongful act.

*Northern Pac. R. Co. v. Schoenfeldt,* 123 Wash. 579, 213 Pac. 26, in effect overruled by *Buck v. Kuykendall,* 267 U. S. 307, 69 L. Ed. 622, we stated in *Williams v. Denney,* 151 Wash. 630, 635, 276 Pac. 858.

*Casey v. Edwards,* 123 Wash. 661, 212 Pac. 1082, overruled by *State ex rel. Oatey Orchard Co. v. Superior Court,* 154 Wash. 10, 13, 280 Pac. 350.

*Vernarelli v. Sweikert,* 123 Wash. 694, 213 Pac. 482, overruled by *Bradley v. S. L. Savidge, Inc.,* 13 Wn. (2d) 28, 49, 53, 123 P. (2d) 780.

*Inland Finance Co. v. Ingersoll Co.,* 124 Wash. 72, 213 Pac. 679, in effect overruled by *Yukon Inv. Co. v. Crescent Meat Co.,* 140 Wash. 136, 248 Pac. 377, expressly overruled by *Bank of Commerce v. Kelpine Prod. Co.,* 167 Wash. 592, 597, 10 P. (2d) 238.

*Kinnear v. King County,* 124 Wash. 102, 213 Pac. 472, overruled by *Inland Empire Land Co. v. Grant County,* 138 Wash. 439, 442, 245 Pac. 14.

*Warner v. Modern Woodmen of America,* 124 Wash. 252, 214 Pac. 161, 34 A. L. R. 87, overruled by *Howard v. Equitable Assurance Society,* 197 Wash. 230, 241, 85 P. (2d) 253.

*Dishman v. Whitney,* 124 Wash. 697, 215 Pac. 71 (see opinion same case 121 Wash. 157, 209 Pac. 12, 29 A. L. R. 460), we stated in *Bourus v. Hagen,* 192 Wash. 588, 591, 74 P. (2d) 205, is no longer an authority.

*Seattle v. Everett,* 125 Wash. 39, 215 Pac. 337, overruled by *Hollenbeck v. Seattle,* 136 Wash. 508, 512, 240 Pac. 916.

*Harju v. Anderson,* 125 Wash. 161, 215 Pac. 327, overruled by *State ex rel. Hibler v. Superior Court,* 164

Wash. 618, 624, 3 P. (2d) 1098, where we reiterated the rule,

"That, in a proceeding brought to vacate a judgment procured by fraud, the prevailing *party* in the action wherein the judgment was obtained must be served with process and brought into the proceedings the same as in an original action. Mere service on the attorney is not sufficient."

*Farr v. Department of Labor & Industries,* 125 Wash. 349, 216 Pac. 20, overruled by *Luton v. Department of Labor & Industries,* 183 Wash. 105, 111, 48 P. (2d) 199. See, also, *Abraham v. Department of Labor & Industries,* 178 Wash. 160, 34 P. (2d) 457; *Powell v. Department of Labor & Industries,* 178 Wash. 699, 34 P. (2d) 459; *Kloeppel v. Department of Labor & Industries,* 178 Wash. 699, 34 P. (2d) 459; and *Knestis v. Unemployment & Comp. Division,* 16 Wn. (2d) 577, 134 P. (2d) 76.

*Finkelberg v. Continental Cas. Co.,* 126 Wash. 543, 219 Pac. 12, overruled by *Merriman v. Maryland Cas. Co.,* 147 Wash. 579, 584, 266 Pac. 682.

*State v. Matson,* 127 Wash. 513, 221 Pac. 311, overruled by *State v. Rouw,* 156 Wash. 198, 203, 286 Pac. 81.

*Piper v. Piper,* 129 Wash. 72, 224 Pac. 576. See *Rochester v. Seattle, R. & S. R. Co.,* 75 Wash. 559, 563, 135 Pac. 209, and *New York Life Ins. Co. v. Newport,* 1 Wn. (2d) 511, 516, 96 P. (2d) 449.

*Anning v. Rothschild & Co.,* 130 Wash. 232, 226 Pac. 1013, overruled by *Bradley v. S. L. Savidge, Inc.,* 13 Wn. (2d) 28, 49, 53, 123 P. (2d) 780.

*Stevens v. Irwin,* 132 Wash. 289, 231 Pac. 783, overruled by *Russell v. Stephens,* 191 Wash. 314, 315, 71 P. (2d) 30.

*Griffin v. Smith,* 132 Wash. 624, 232 Pac. 929, overruled by *Bradley v. S. L. Savidge, Inc.,* 13 Wn. (2d) 28, 49, 53, 123 P. (2d) 780.

*Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29, and *In re Kuhn's Estate,* 132 Wash. 678, 233 Pac. 293, overruled by *Culmback v. Stevens,* 158 Wash. 675, 291 Pac. 705, and *Hubbard v. Grandquist,* 191 Wash. 442, 448, 71 P. (2d) 410.

*Holt Mfg. Co. v. Jaussaud,* 132 Wash. 667, 233 Pac. 35, 38 A. L. R. 1312, overruled by *Hess v. Starwich,* 149 Wash. 679, 272 Pac. 75, and *Kuhn v. Ambrose,* 171 Wash. 528, 531, 18 P. (2d) 485.

*Loveless v. Chehalis,* 133 Wash. 33, 233 Pac. 301, overruled by *State ex rel. Larson v. Vancouver,* 160 Wash. 655, 662, 295 Pac. 947. See *State ex rel. Johnson v. Dayton,* 200 Wash. 91, 94, 93 P. (2d) 909.

*Danz v. American Federation of Musicians,* 133 Wash. 186, 233 Pac. 630, overruled by *Yakima v. Gorham,* 200 Wash. 564, 568, 94 P. (2d) 180.

*Morris v. Favor,* 134 Wash. 75, 234 Pac. 1040, overruled by *State ex rel. Mason v. Board of Commissioners,* 146 Wash. 449, 464, 263 Pac. 735.

*Alto v. Hartwood Lbr. Co.,* 135 Wash. 368, 237 Pac. 987, overruled by *Lucas v. Luckenbach S. S. Co.,* 141 Wash. 504, 510, 252 Pac. 526.

*State ex rel. Reynolds v. Hill,* 135 Wash. 442, 237 Pac. 1004, overruled by *State ex rel. Vandervort v. Grant,* 156 Wash. 96, 102, 286 Pac. 63, and by *State ex rel. Sohlman v. Oldham,* 156 Wash. 484, 485, 287 Pac. 680.

*Stevens v. Naches State Bank,* 136 Wash. 137, 238 Pac. 918. See *Sun Life Assur. Co. v. Outler,* 172 Wash. 540, 546, 20 P. (2d) 1110.

*Perkins v. Ellensburg,* 138 Wash. 641, 244 Pac. 996, overruled by *Bale v. Floyd,* 199 Wash. 503, 509, 91 P. (2d) 1025.

*Riverside Finance Co. v. Griffith,* 140 Wash. 322, 248 Pac. 786, overruled by *Walker v. Fowler,* 155 Wash.

631, 637, 285 Pac. 649. See *In re Binge's Estate*, 5 Wn. (2d) 446, 475, 105 P. (2d) 689.

*Feldtman v. Russak*, 141 Wash. 287, 251 Pac. 572; *Kludas v. Inland-American Printing Co.*, 149 Wash. 180, 270 Pac. 429; *Barach v. Island Empire T. & T. Co.*, 151 Wash. 279, 275 Pac. 713; *Mitchell v. Nalley's, Inc.*, 163 Wash. 183, 300 Pac. 526; *Steiner v. Royal Blue Cab Co.*, 172 Wash. 396, 20 P. (2d) 39; *McMullen v. Warren Motor Co.*, 174 Wash. 454, 25 P. (2d) 99; and *Templin v. Doan*, 187 Wash. 68, 59 P. (2d) 1110. See *Bradley v. S. L. Savidge, Inc.*, 13 Wn. (2d) 28, 123 P. (2d) 780, disposing of opinions in the foregoing and *Sullivan v. Associated Dealers*, 4 Wn. (2d) 352, 103 P. (2d) 489.

*State v. Brunn*, 144 Wash. 341, 258 Pac. 13, overruled on rehearing 145 Wash. 435, 260 Pac. 990.

*Millspaugh v. Alert Transfer Co.*, 145 Wash. 111, 259 Pac. 22, overruled by *Bredemeyer v. Johnson*, 179 Wash. 225, 36 P. (2d) 1062. See *Twedt v. Seattle Taxicab Co.*, 121 Wash. 562, 210 Pac. 20; *Benson v. Anderson*, 129 Wash. 19, 223 Pac. 1063, *Weaver v. Windust*, 195 Wash. 240, 80 P. (2d) 766; and *Zurfluh v. Lewis County*, 199 Wash. 378, 381, 91 P. (2d) 1002.

*State v. Smith*, 145 Wash. 250, 259 Pac. 711, overruled by *State v. Gaffney*, 151 Wash. 599, 276 Pac. 873, and *State v. Freitas*, 158 Wash. 155, 156, 290 Pac. 701.

*Colby & Dickinson v. Baker*, 145 Wash. 584, 261 Pac. 101, overruled by *Columbia Lbr. Co. v. Bothell Dairy Farm*, 174 Wash. 662, 666, 25 P. (2d) 1037.

*State ex rel. Merritt v. Superior Court*, 147 Wash. 690, 267 Pac. 503, overruled by *State ex rel. Schmidt v. Nevins*, 180 Wash. 356, 358, 39 P. (2d) 990.

*In re Cross' Estate*, 152 Wash. 459, 278 Pac. 414, which overruled three cases, overruled by *In re Verchot's Estate*, 4 Wn. (2d) 574, 578, 104 P. (2d) 490,

because in conflict with *Singleton v. Cheek,* 284 U. S. 493, 76 L. Ed. 419, 52 S. Ct. 257, 81 A. L. R. 923.

*Keller v. Breneman,* 153 Wash. 208, 279 Pac. 588, 67 A. L. R. 92. See *Chapin v. Stickel,* 173 Wash. 174, 182, 22 P. (2d) 290.

*Garrett v. Byerly,* 155 Wash. 351, 284 Pac. 343, 68 L. R. A. 254, overruled by *Martin v. Hadenfeldt,* 157 Wash. 563, 568, 289 Pac. 533. See, also, *Eggert v. Schumacher,* 173 Wash. 119, 122, 22 P. (2d) 52.

*Downie v. Renton,* 162 Wash. 181, 298 Pac. 454, overruled on rehearing 167 Wash. 374, 9 P. (2d) 372.

*Tabb v. Funk,* 170 Wash. 545, 17 P. (2d) 18, overruled by *Dearling v. Funk,* 177 Wash. 349, 365, 32 P. (2d) 548.

*Bowman v. Union High School Dist.,* 173 Wash. 299, 22 P. (2d) 991, overruled by *Casper v. Longview School Dist.,* 5 Wn. (2d) 403, 409, 105 P. (2d) 503.

*Karp v. Herder,* 181 Wash. 583, 44 P. (2d) 808, overruled by *Morris v. Chicago, M. St. P. & P. R. Co.,* 1 Wn. (2d) 587, 604, 97 P. (2d) 119, 100 P. (2d) 19.

*Russell v. Stephens,* 189 Wash. 233, 64 P. (2d) 787, overruled on rehearing 191 Wash. 314, 315, 71 P. (2d) 30.

*Collins v. Bucoda,* 191 Wash. 242, 70 P. (2d) 1062, overruled by *Longview Co. v. Lynn,* 6 Wn. (2d) 507, 529, 108 P. (2d) 365.

*Pacific Tel. & Tel. Co. v. Henneford,* 195 Wash. 553, 81 P. (2d) 786, overruled by *Spokane v. State,* 198 Wash. 682, 89 P. (2d) 826.

*Purdy v. State,* 199 Wash. 638, 92 P. (2d) 880, overruled by *Washington Security Co. v. State,* 9 Wn. (2d) 197, 205, 114 P. (2d) 965.

*Shively v. Garage Employees Local Union,* 6 Wn. (2d) 560, 108 P. (2d) 354, overruled by *O'Neil v. Building etc. Union,* 9 Wn. (2d) 507, 115 P. (2d) 662.

Appellant's petition for rehearing should be granted, the judgment reversed and the cause remanded to the trial court for a new trial.

SIMPSON, C. J., concurs with MILLARD, J.